FANNIE H. STILLMAN

v.

CHARLES P. STILLMAN.

</div>

DIVORCE—ALIMONY AFTER RE-MARRIAGE.—The fact that a divorced wife has re-married, it being shown that her husband by re-marriage is unable to support her, is no ground for entering a decree relieving the former husband from payment of alimony; nor is it a sufficient reason for entering an order reducing the alimony to a mere nominal sum.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding. Opinion filed December 13, 1880.

Upon a bill in chancery theretofore brought in the Circuit Court of Cook county, by Fannie H. Stillman against her hus-

Stillman v. Stillman.

band, Charles P. Stillman, for a divorce on the ground of adultery committed by him since their marriage, and upon a hearing on bill, answer and testimony, a decree was rendered in her favor July 9, 1877, finding the defendant guilty of adultery as charged in the bill, dissolving the marriage, and adjudging and decreeing that defendant should pay complainant, as alimony, the sum of sixty dollars per month, payable at the end of each and every month, and dating from May 1, 1877.

The defendant made said payments down to February 1, 1880 ; but January 14, 1880, the complainant intermarried with one Frank Eldridge, residing at Baraboo, in the State of Wisconsin ; immediately after which the defendant began preparations for the purpose, and having caused complainant to be served February 25th, 1880, with copies of affidavits and notice that he would, on the first day of the next succeeding March, apply to said court for such modification of said decree as would relieve him from the payment of any more of said alimony, entered such motion, which came on to be heard March 30th, 1880, upon affidavits filed by the respective parties, and thereupon complainant's solicitor made application to the court that defendant be required to furnish reasonable counsel fees for complainant's solicitor in opposing said motion, which the court reserved until the final disposition of said matter.

By undisputed testimony, it appeared that since said decree the said defendant had married a prostitute whom he had kept for some three years prior to said decree, and who had three children. It appeared by the clear weight and preponderance of the evidence produced that defendant's ability to pay said alimony was ample, except so far as it had been impaired by an improvident and dissolute course of life ; that his father, who died in 1870, left him a large estate. It also appeared by uncontradicted testimony that the person whom the complainant had married was employed as a telegraph operator at a salary of seventy-five dollars a month as his only income, out of which he had to support an aged mother, and was, in fact, unable to support complainant. The court below, upon the sole ground that complainant had married again since said decree

of divorce, without specially finding any other fact, in its order changed said decree, so that complainant should receive one dollar per year, in lieu of the said sixty dollars per month as alimony; but required defendant to pay complainant, as solicitor's fee, one hundred dollars in twenty days. The complainant caused the whole testimony and rulings of the court to be preserved by a certificate of evidence, and brought the case to this court on error, assigning for error the modification of said decree as to alimony, and the defendant assigns for cross-error the allowance of counsel fee as aforesaid.

Mr. JOSEPH H. WRIGHT, for appellant; that the reduction of the husband's estate by gifts will not be allowed to diminish the alimony, cited Forest v. Forest, 5 Bosw. 672.

A decree for alimony will not be disturbed if the record does not show amount of husband's estate: Ifert v. Ifert, 29 Ind. 473; Shirley v. Wardrop, 1 Swab. & T. 317; 2 Bishop's Marriage and Divorce, 495.

The husband must show that the allowance is no longer proportionate or just: 2 Bishop's Marriage and Divorce, 430; Wilde v. Wilde, 36 Iowa, 319; Fisher v. Fisher, 32 Iowa, 20; Shirley v. Wardrop, 1 Swab. & T. 317; Thornberry v. Thornberry, 4 Litt. 257.

If the husband has no property, alimony may be based on his earnings, or ability to earn: 2 Bishop's Marriage and Divorce, 395; Bailey v. Bailey, 21 Gratt. 43; Kerby v. Kerby, 1 Paige, 261.

Generally, as to when alimony will be allowed, and its amount: 2 Bishop's Marriage and Divorce, 446; Burr v. Burr, 7 Hill, 207; Thornberry v. Thornberry, 4 Litt. 252; Pickford v. Pickford, 1 Paige's Ch. 274; Fisher v. Fisher, 2 Litt. 337; Miller v. Miller, 6 Johns. Ch. 91; Bergen v. Bergen, 22 Ill. 187; Stewartson v. Stewartson, 15 Ill. 145; Wheeler v. Wheeler, 18 Ill. 39; Joliffe v. Joliffe, 32 Ill. 527; Armstrong v. Armstrong, 35 Ill. 109; Bursler v. Bursler, 5 Pick. 427; Clark v. Lott, 11 Ill. 105; Barber v. Barber, 16 Cal. 378; The People v. Hovey, 5 Barb. 120; Foote v. Foote, 22 Ill. 425; Dinet v. Eigenmann, 80 Ill. 274; Saunders v. Saunders, 1 Swab. & T. 72.

Stillman v. Stillman.

Remarriage is no ground for relief from payment of alimony: 2 Bishop's Marriage and Divorce, 478; Miller v. Clark, 23 Ind. 370; Shepherd v. Shepherd, 3 N. Y. Sup. Ct. 715.

Mr. A. T. GALT, for appellee; that a subsequent marriage releases the former husband from payment of alimony, cited Albee v. Wyman, 10 Gray, 222; Bowman v. Worthington, 24 Ark. 522; Fisher v. Fisher, 2 Swab. & T. 410; Sidney v. Sidney, 4 Swab. & T. 178; Bankston v. Bankston, 27 Miss. 5.

Where the reason for a rule requiring a defendant to pay solicitor's fees to enable a wife to prosecute a divorce, fails, the rule no longer exists: Newman v. Newman, 69 Ill. 167.

McALLISTER, P. J.   The wife, complainant below, the plaintiff in error here, obtained, July 9, 1877, a regular decree by a court of competent jurisdiction, dissolving the marriage between her and her husband, the defendant, for adultery committed by him during their marriage relation. That decree fixed also the amount of alimony which such defendant was to provide for her after such separation, at sixty dollars per month for each and every month, to be payable at the end of each month, and dating from May 1, 1877. This the defendant paid down to and including the month of January, 1880. But on the fourteenth of the last named month, the plaintiff married another man. Although the defendant had himself, before that time and since the decree, married, as the uncontradicted evidence shows, a prostitute with three children, whom he had kept and supported for some three years next before the decree, yet upon plaintiff becoming married, he set about preparing to get relieved from paying her any more alimony under said decree; and on March 30th, 1880, his application to the court in which the decree was rendered, was made upon affidavits, and by her, in like manner, opposed. The court below, without specifically finding any new fact bearing upon the question, except merely that she had married again since the decree, so amended the same as to relieve the defendant from such alimony, by providing that he should pay plaintiff as alimony one dollar per year in lieu of that of sixty dollars per month, as aforesaid. The

defendant's ability to pay the alimony as originally provided, except as it may have been impaired by dissolute and improvident habits, is beyond doubt. He has a large estate, which with proper management and conduct on his part, would yield him an ample income. The court below did not specially find any want of ability. His delictum is as above stated, and without a single mitigating circumstance. She is blameless, unless the fact that she married nearly three years after the decree a man who earns his living by his own labor, and out of his earnings has to support an aged mother, shall be regarded as a fault on her part; for it affirmatively appeared by uncontradicted testimony, that such second husband's only income is his wages as telegraph operator, at the rate of seventy-five dollars per month, out of which he has to support an aged mother, and that he is therefore unable to support plaintiff. It seems to us, therefore, that the question to be decided resolves itself simply into this: is the mere fact that plaintiff, two years and a half after the decree of divorce, married again, but to a man unable to support her, sufficient to justify a court of equity, acting upon the principles of natural justice, to thus interfere in favor of a party so culpable, and against one otherwise so entirely blameless?

Before proceeding to discuss this question, it will be well to ascertain the principles which control in the exercise of the power given by statute to subsequently make alterations in a decree respecting alimony. The statute provides that when a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just; and in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance, and may enforce the payment of the same in any other manner consistent with the rules and practice of the court. And the court may on application, from time to time, make such alterations in the allowance of alimony and maintenance as shall appear reasonable and proper.

Under this last provision, we do not understand that the court, after the decree is passed and the term is closed, has any

Stillman v. Stillman.

power to review such original decree as to alimony, and alter it, merely on the ground that it was not a proper one at the time it was made; but the power so given should be construed as authorizing such alteration only when it is necessary to meet new facts, transpiring after the decree. Perkins v. Perkins, 12 Mich. 456.

The conclusion would seem to logically follow, that in making such alterations to meet new facts, transpiring subsequently to the decree the court, should be governed by substantially the same rules and guides as in fixing the amount and manner of payment in the first instance. Now, alimony, as applied to the marital relation, has been defined by our Supreme Court to be that maintenance or support which the husband on separation is bound to provide for the wife, and is measured by the wants of the person entitled to it, and the circumstances and ability of him who is bound to furnish it. Wheeler v. Wheeler, 18 Ill., 39; Foote v. Foote, 22 Ib., 425, in which last mentioned case it was held, that although the allowance was said to be discretionary, yet it was not an arbitrary, but a judicial discretion, and therefore subject to revision on appeal or error.

It follows from these views that the original decree must, as respects the alimony as well as the granting the divorce, be regarded as just and proper at the time of its rendition; and if the alteration was made upon new facts, but which, under the circumstances and the exercise of a sound judicial discretion were insufficient to warrant such alteration, then this court should reverse such supplemental order.

This brings us to the question involved, whether the mere fact of marriage by the plaintiff, as above stated, constituted a sufficient ground for such alteration. If it did, then no other reason for it is conceivable, but one or all of the following: (1), that equity regards the obligation of the husband to provide alimony for the wife, after separation for his delinquency, as only nominal, and a sort of unjust burden, so that the court should seize upon slight circumstances, even upon a mere suppositious supply from some other source, as a sufficient reason for relieving the defendant from such burden; or (2), that even

after divorce she owed him certain duties, among which was that of remaining single during the reception of support from him, so that the loss of said support should follow a breach of that duty by way of forfeiture; or (3), that equity, instead of favoring marriage, favors restraint of marriage.

Does it need argument to prove that each of the above propositions is unsound, if not the very reverse of the true spirit and doctrine of equity? When this woman, being herself blameless, obtained the divorce from defendant, for those wrongful and immoral acts on his part which drove her from her home and the comforts of domestic life, she became thereby wholly absolved from every duty towards him, except merely those arising from the principles of a common humanity. But not so as to him; because, as a consequence of such wrong on his part, an obligation arose which has its foundation in natural equity, is recognized by positive law, and bound him to furnish maintenance for her, to be measured by her wants and his circumstances and ability, and to continue during their joint lives, unless she acquired other means of support.

If that obligation is to be regarded as merely nominal, and equity, viewing his position with tenderness, shall hold the burden to be an unjust one, then the court may seize upon even slight circumstances, and relieve him from that burden. Such, however, is far from being the actual case. Instead of that obligation being so regarded by the courts, it has not only been looked upon as a substantial but a most sacred obligation, not to be relieved from except upon substantial grounds. Granting this, then, upon what principle—what process of reasoning —can it be made out that relief should be awarded upon the acquisition of mere theoretical or supposititious means of support by the wife? Suppose she had married a poor poet or musical composer, whose genius and application were destined to gain, not present returns, but great posthumous fame, as has many times happened; that she had been persuaded by her affection and admiration for the man to undertake to share his life of poverty, and so had married him. Now, upon the principle applied by the court below, that the mere fact of her marrying again should absolve the defendant from his obligation to pay

Stillman v. Stillman.

alimony, in the face of the fact that defendant's own wrong had exposed her to such a fate, the defendant would be absolved in the case supposed; but the case supposed is the same in principle as the actual case. She acquired by such marriage the mere theoretical obligation of another to support her, but which he is unable to perform.

In order to work out the ends of justice, courts of equity sometimes will regard those things as done which ought to be done. But it would be a perversion of the doctrine to the purposes of injustice to apply it in favor of the wrong-doer and against an injured innocent party, for the purpose of relieving the former from a just obligation to the latter. The statute provides no restraint upon the wife remarrying, but authorizes the court to allow her to resume her maiden name, thus improving her marriageable condition, and if the doctrine of the court below is to be engrafted upon the law by the courts, then the statute providing for alimony will operate as a restraint upon marriage, which is against the policy of the law. .

The true rule, as it seems to us, is, that while the remarriage of the wife might be *prima facie* or presumptive evidence that she had acquired other means of support, yet it is not conclusive ; and when it is made to appear that actually she had not, then such marriage affords no ground for relieving the former delinquent husband from the alimony provided in the decree, or for reducing it to a mere nominal sum.

In Forrest v. Forrest, 3 Bosw. 661, the court said: " What she may do after she has been divorced and the marriage relation has been dissolved by reason of his adultery, can affect no matrimonial engagement, for none exists; nor violate any matrimonial duty, for she no longer owes any to her former husband." Shepherd v. Shepherd, in the New York Supreme Court, was like this present case, and it was held, at special term, that the remarriage of the wife, even when her second husband had an income of $2,500 per year, as a salary, but it appearing that the defendant's ability was ample and she needed her allowance, the court refused to disturb such allowance on account of the divorced wife remarrying; and on ap-

peal this ruling was affirmed at general term. 3 N. Y. Sup. Ct. R. p. 715; S. C. 1 Hun. p. 240.

In the case of Albee v. Wayman, 10 Gray, 222, relied on by defendant, the question was not before the court in any such form as here, or as in Shepherd v. Shepherd, *supra;* but arose collaterally upon the fact incidentally appearing of the wife having married again, and the court said: "By her act of subsequent marriage she secured herself other resources for her support." Had it affirmatively appeared that she had not, a different question would have been presented. The case of Bowman v. Worthington, 24 Ark. 538, also relied upon, is a wholly different case. We shall not stop to state it.

The defendant has assigned for cross-error the allowance by the court below of one hundred dollars to plaintiff as counsel fee, in opposing the motion to abrogate the allowance of alimony. No authorities in point are cited. We are unable to perceive why such an allowance of counsel fees to defend such application was not just as proper as it was to carry on the divorce suit originally. Helden v. Helden, 9 Wis. 557; Same v. Same, 11 Wis. 558.

So much of the order of the court below entered of record April 12, 1880, as absolves the defendant from paying the said complainant from the date thereof, the alimony ordered by said (the original) decree, and providing that in lieu of the alimony mentioned in said decree, the said defendant should pay to complainant the sum of one dollar each and every year, to be paid at the end of each year, is reversed, and in all other respects the said order is affirmed.

Reversed in part.

WILSON, J., dissenting. I am unable to concur in the conclusion reached by a majority of the court. Our laws justly require the husband to contribute to the support and maintenance of the wife, from whom he has by his misconduct been divorced, but to compel him to continue such support after she has remarried, and is living as the wife of another, is, as it seems to me, offensive to a proper sense of decency, and is degrading to him who succeeds to the conjugal relations of hus-

band.  In enlightened and refined communities, where the institution of marriage is one of the most sacred and delicate nature, the spectacle of a man, while occupying marital relations with a woman, asking a court of equity in her name to compel another man to pay for her support, is most unseemly, not to say revolting.  This sentiment has found expression impliedly, in the English divorce courts, where, under statutes similar to ours, all decrees for alimony so far as I am aware, are in terms *dum sola*.  Upon her marrying again, she should, in my judgment, be held to have elected to rely upon a new source for her means of support, and to thereby have discharged her former husband from further obligation in that behalf.  This principle underlies the pension laws in the United States, which provide that the pension to the widow of a deceased soldier shall terminate upon her remarriage, and such a provision has not, to my knowledge, ever been unfavorably criticised.  Nor should a widow's pension, any more than a divorced wife's alimony, be regarded as a mere gratuity.  It is based upon a sense of obligation on the part of the government in favor of the widow and children of one who has rendered valuable services to the country, and by whose death the wife is deprived of the means of support.  The claims thus rest, essentially, upon the same basis of natural justice; and upon principle—whatever ought to be regarded as a sufficient ground for defeating the one should also be held to defeat the other.

The question involved in the present case must be decided, mainly as one of first impression, although it is not entirely without authorities bearing upon it, the weight of which I regard as strongly preponderating in favor of the proposition that a remarriage of a divorced wife defeats the continuance of alimony.  The only two cases cited in the opinion of the court are Forrest v. Forrest, and Shepherd v. Shepherd, decided by the Supreme Court of New York, in general term.  In the former case there had been no remarriage, and the question was therefore not raised nor considered, but the motion to reduce the alimony was denied, on the ground the statute did not allow the court to change the alimony fixed at the time when the decree was entered.  In Shepherd v. Shep-

herd the wife had remarried, and the court followed the ruling in the Forrest case, and held that the remarriage did not take the case out of the rule. The opinions of that court are entitled to very great respect, but as the decisions referred to were not made by the court of last resort, the question cannot be regarded as finally settled in New York.

In Bishop on Marriage and Divorce, Vol. 2, page 479, the learned author, after referring to the New York cases, and the peculiar statute of Indiana, under which remarriage works no forfeiture of alimony, says : " But where alimony more nearly approximates the idea of the allowance which the ecclesiastical courts used to make the wife on a separation from bed and board (as under our statute it does), the result would appear to be different. For though the second marriage is no violation of duties, moral or legal, and is indeed a thing which the law approves, yet it has provided the wife with a new source of support, and thus has wrought a change in the condition and circumstances of the parties.

In Albee v. Wyman, 10 Gray, 222, the court says : " The application for divorce and alimony was her own affair, a voluntary act of hers, instituted for her benefit. So long as she remained unmarried, no ground existed for lessening the amount for such alimony. By her subsequent marriage she secured herself other resources for her support, and thus voluntarily furnished the ground for the reduction of alimony."

And that case was a stronger one than the case at bar, for there the husband had covenanted, under articles of separation entered into prior to the application for divorce, to pay his wife an annuity during her life, and alimony having been allowed on the subsequent divorce proceedings, which was fixed by agreement at the same amount as that stipulated for in the articles of separation. The wife having subsequently remarried, the court reduced the alimony to a nominal sum.

The only doubt expressed by the court was, not whether the marriage did not cut off the alimony, but whether it did not also have the effect to defeat any recovery on the articles of separation. The defeat of the alimony was not made to depend upon the ability of the second husband to support the wife,

but is put upon the ground that because the wife had voluntarily taken another husband, she must look to him for future support. Certainly a decision made with the concurrence and approval of so eminent a jurist as Chief Justice Shaw and all the other judges, is entitled to much weight.

In the well considered case of Bowman v. Worthington, 24 Ark. 522, where the wife contracted a second marriage, the Supreme Court of Arkansas held that when a divorced wife marries again, she has no right to alimony or support from her former husband, either during his life or after the death of the second husband.

Again, in Fisher v. Fisher, 2 Swab. & Tristam, R. 411, Sir Creswell Creswell says: "If she avail herself of the freedom conferred by the decree of this court, and marries again, it would be unreasonable to compel the former husband to support her."

I am of the opinion, both upon reason and the weight of authority, that the remarriage of a divorced wife should be held to defeat the continuance of alimony. By the contract of marriage the husband assumes the duty and obligation to support his wife, and the law enforces this duty. If the husband is guilty of a breach of marital obligation sufficient in extent to justify a dissolution of the bonds of matrimony, the law does not, in consequence thereof, release him from his obligation to maintain his wife. But when the wife seeks and obtains a divorce *a vinculo*, and marries again, she thereby fixes upon another and different man the obligation to support and maintain her. I think the decision of the court below should be affirmed.