## Bowman vs. Worthington.

Where by statute jurisdiction over particular subjects of equity is conferred, or given to common law courts, the entire body of law administered in the equity courts of this country attaches; but the subject of divorce and all incidental questions, including alimony and matrimonial causes, are not subjects of equitable jurisdiction; and in such cases the courts have no other powers than those expressly conferred by the statute.

Alimony being an incident to a divorce, the courts of this state, under our statute, can only grant it in connection with the decree of divorce; and have no jurisdiction to entertain an application for alimony where the decree has been granted by another tribunal.

Where a divorced wife marries again she has no right to alimony or support from the first husband, either during the life, or after the death of the second husband.

*Appeal from Chicot Circuit Court in Chancery.*

Hon. Wm. M. Harrison, Circuit Judge.

Pike & Adams, Albert Pike & Son, for appellant.

Undoubtedly the court of chancery, in England, had no jurisdiction in matters of divorce and alimony. But our statute, ch. 59, sec. 3, provides that the circuit court, "sitting as a court of chancery, shall have jurisdiction in all cases of divorce and alimony, or maintenance," like proceedings being had as "in other

cases on the equity side of said court." It is true that sec. 9 provides that "when a decree shall be entered," the court shall make such order touching the alimony of the wife, as from the circumstances of the parties, and the nature of the case, shall be reasonable; and that there is no express provision giving an independent jurisdiction to decree alimony, where there has been a decree for a divorce, and no order in respect to alimony.

We have no ecclesiastical courts, and if, after a judicial or legislative divorce, leaving the matter of alimony untouched, there remains a right to have alimony, the remedy to enforce this right must of necessity be in chancery, since, otherwise, it would be a right without a remedy. It is but a question whether the statute gives the circuit court, in chancery, all the powers of the ecclesiastical court, in regard both to divorce and alimony or only a part of such powers. This court settled this in *Rose* vs. *Rose*, 9 Ark., 512.

The legislature of Kentucky *could* not act on the matter of alimony, that being reserved for judicial investigation. If, as is admitted, the divorce was valid and effectual, it left the right to maintenance unimpaired, and there must be a remedy for it.

That the divorce was valid, the legislature of Kentucky having power, as parliament had, to enact it, see *Satterlee vs. Matthewson*, 2 *Peters* 413; *Story, Confl. of Laws*, § 202; 2 *Kent*, 110; *Opinion of the judges of Maine*, 4 *Shepl.* 479; *Wright vs. Wright*, 2 *Maryland* 429; *Cabell vs. Cabell*, 1 *Metc.* (*Ky.*) 319; 1 *Bishop, Book* vi: *ch.* xxxiv; *Starr vs. Pease*, 8 *Conn.* 541; *Berthelemy vs. Johnson*, 3 *B. Mon.* 90; *Hull vs. Hull*, 2 *Strobh. Eq.* 174; *Bingham vs. Miller*, 17 *Ohio* 445; *Levins vs. Sleator*, 2 *Greene* (*Iowa*) 604; *Townsend vs. Griffin*, 4 *Harring.* 440; *Holmes vs. Holmes*, 4 *Barb.* 295; *Maguire vs. Maguire*, 7 *Dana* 181; *Crane vs. Meginnis*, 1 *Gill & Johns.* 463; *Jamison vs. Jamison*, 4 *Md. ch.* 289; *Jones vs. Jones*, 2 *Jones* (*Pa.*) 350; *Ponder vs. Graham*, 4 *Flor.*, 23.

If the complainant, legally divorced in Kentucky, where she was married, had a right to alimony afterwards to be decreed to

her, that right is valid everywhere; and if not enforceable here, in equity, there is a clear and undeniable right, for which, on technical grounds, there is no remedy. The jurisdiction is necessarily cast upon the court of chancery, because the jurisdiction in regard to marriage contracts and breaches of them is given generally to that court. See *Almond vs. Almond*, 4 *Rand.*, 662; *Story Confl. of Laws*, sec. 230, *b*.

On the question whether a separate independent suit for alimony can be maintained, it is useless to quote the law and decisions in respect to alimony applied for where there has been no divorce, and none is asked for, but the parties propose merely to live separate; as in *Ball vs. Montgomery*, 2 *Ves. Jr.*, 191, 195.

In *Richardson vs. Wilson*, 8 *Yerger* 67, the husband had obtained a legislative divorce, the act providing that nothing contained in it should deprive the woman of her right to alimony if by law she were entitled to it. She filed a bill for alimony, and it was granted by the court. See *Crane vs. Meginnis*, 1 *Gill & John.*, 463; *Wright vs. Wright's Lessee*, 2 *Maryland*, 429; *Jamison vs. Jamison*, 4 *Maryland Ch. Rep.*, 289; *Dunnock vs. Dunnock*, 3 *Maryland Ch. Rep.*, 140.

In *Almond vs. Almond*, 4 *Rand.*, 662, the court admitted the English doctrine, but followed *Purcell vs. Purcell*, 4 *Hen. & Munf.*, 507, in giving alimony upon a mere separation, deeming the reasoning of the chancellor on the point of jurisdiction sound.

In North Carolina, the courts of equity have always exercised the same jurisdiction. *Anon.*, 1 *Hayw.*, 347; *Spiller vs. Spiller*, 1 *Hayw.*, 482; *Knight vs. Knight*, 2 *Hayw.*, 101.

So also in Kentucky: *Lockridge vs. Lockridge*, 3 *Dana*, 28; *Butler vs. Butler*, 4 *Litt.*, 201; *Boggess vs. Boggess*, 4 *Dana*, 307; *Wooldridge vs. Lucas*, 7 *B. Monr.*, 49.

And in South Carolina: *Jelineau vs. Jelineau*, 2 *Desaus.*, 45; *Prince vs. Prince*, 1 *Richards. Eq.*, 282; *Threewitts vs. Threewitts*, 4 *Desau.*, 560; *Prather vs. Prather*, id. 33; *Mattison vs. Mattison*, 1 *Strobh. Eq.*, 387.

And in Alabama: *Glover vs. Glover*, 16 *Ala.*, 440; *Wray vs.*

*Wray*, 33 *Ala.*, 187: where the granting of alimony is declared to be an exercise of an original jurisdiction in the court of chancery.

It has been held in Mississippi that a party is not compelled to proceed for divorce and alimony by one and the same bill; but if the question of alimony is not settled in the divorce suit, the wife may *afterwards* sue for it by separate bill, in the same or in another court of competent jurisdiction. *Shotwell vs. Shotwell, Sm. & M. Ch.*, 51; *Lawson vs. Shotwell*, 27 *Miss.*, 630.

It was greatly relied on in the court below, that after remaining single for several years, Mrs. Worthington married again. The law encourages this, and discountenances those judicial separations by which, as in some states, a party is virtually divorced, but not at liberty to marry.

When she married again, if her alimony had been already fixed by a court in Arkansas, the court could under the statute have diminished it. In *Albee vs. Wyman*, 10 *Gray*, 222, when a divorced wife re-married, the court reduced the amount of alimony to a nominal sum, for the reason that it was not *necessary* or *proper* to charge her former husband for her future support. The court said that by the second marriage she secured herself other resources for her support, and thus voluntarily furnished the ground for the reduction of the alimony. Certainly, when she became a widow again, and dependent on her parents, this reason ceased. The marriage did not *annul* her right to alimony. There is no such penalty on marriage. It is not a condition of the grant of alimony, that the divorced wife shall not marry again. It is exceedingly doubtful whether section 12 of our statute relates to any thing more than *temporary* alimony *pendente lite*, and whether a subsequent marriage of the wife would, in this state, warrant the court in reducing the amount of alimony, any more than it would impair her right to dower, or a distributive share in her husband's estate. Why should it? The whole had to depend on the facts creating her right to alimony. And these, if she had obtained a decree, would have been the facts existing, and *as* they

existed, when the alimony was decreed. *Forrest vs. Forrest, ub. sup;* 2 *Bish. sec.* 488.

SUTTON, and GARLAND & NASH, for appellee.

Jurisdiction in divorce and matrimonial causes, including alimony, is conferred upon the circuit court, sitting as a court of chancery. But the subject of divorce and all incidental questions are not subjects of equitable jurisdiction; courts of equity in England did not exercise jurisdiction over them. The court, therefore, in cases of this kind, must look to and be governed by the statutory provision. It has no other powers than those expressly thus conferred. And while it may sit as a court of chancery, it is not to be understood as exercising inherent chancery powers, but as a court limited, guided and directed by express statutory provisions, over a subject matter never belonging to chancery jurisdiction. It is then the circuit court, invested expressly by statute, with authority to investigate and try cases of this kind, by rules of proceeding adopted and practiced in courts of chancery. The first and main question then to be determined in the commencement of this investigation is, what authority has this court to grant the relief prayed for in this bill—or decree alimony in any case. The question is not whether a court of chancery will entertain a bill supplemental to a legislative or parliamentary divorce, in the state of Arkansas. We are not called upon to discuss the powers of a court of chancery in this case, for a court of chancery under our laws has no jurisdiction over the subject matter of this suit whatever. The statute points out the court, and the only court that can entertain the jurisdiction, and this express authority excludes the jurisdiction of all other courts. This express statutory provision, not only locates the jurisdiction, but it details the manner, the time when, and the circumstances under which, alimony may be adjudged, and the causes for which it may be adjudged to the complainant or any other individual applying to the courts of Arkansas. The provision of law referred to is an original one, confirming, confining,

and limiting and directing the exercises of the powers of this court over the subject of alimony—the subject matter of controversy in this case.

The first section of our law, *chap.* 59, *Ark. Dig.*, enumerates the causes for which a divorce may be granted, and the only causes. The 3d section locates the jurisdiction, " for all cases of divorce and alimony." The 4th section defines the necessary qualifications of the bill of complaint, and the 9th section provides, " when a decree (of divorce) shall be entered, the court shall make such order touching the alimony of the wife as from the circumstances of the parties and the nature of the case shall be warrantable," and in 11th section " the said circuit court shall have power to enforce the performance of any decree for alimony by sequestration or other lawful ways and means."

Statutes in cases of this kind are to be strictly construed. See *sec.* 575, *Bishop M.* and *D.*; and *Harrington vs. Harrington*, 10 *Vt.*, 505, under a statute similar to ours. The court said : " The statute gives the court, which in application for divorce, acts as a court of law, no power to grant alimony, except after divorce granted." And in Massachusetts a late case holds " that until *stat.* 1855, *c.* 137, expressly conferred the authority on the courts, they could not order temporary support." A different rule of construction, however, prevails in New York, Kentucky, New Jersey, and other states, but mainly because the jurisdiction of cases of divorce, alimony, and matrimonial causes are, in those states conferred upon courts of equity generally. By our statute, section 9, alimony is incidental with divorce, and inseparable from it by any fair construction. See also section 549, and following sections, and note 1, *Bishop, M.* and *D.*; 2 *Story's Equity*, *sec.* 1422.

Alimony has no common law existence as a separate independent right. It does not follow a divorce, as a matter of course, or as a matter of right, but when found, it comes as an incident to a proceeding for some other purpose, as for a divorce for certain causes. No court in England has any jurisdiction to grant it,

when it is the only thing or only relief sought.  See *Ball vs. Montgomery*, 2d *Vesey, Jr., p.* 195; *Duncan vs. Duncan*, 2d *Vesey, Jr.*, 385 ; *Rees vs. Watts*, 9 *Watts, p.* 90—93 ; *Head vs. Head*, 3d *Atk.*, 547; *Lawson vs. Shotwell*, 27th *Miss.*, 630. *Bankstone vs. Bankstone*, 27th *Miss.*, 692.   And this doctrine is laid down and expressly decided in the cases of *Duval vs. Duval*, 13th *Mass.*, 264; *Jones vs. Jones*, 16th *Maine*, 308 ; *Dean vs. Richardson*, 5th *Pick.*, 161 ; *Blaker vs. Cooper*, 7, *S. and R.* 500; *Smith vs. Smith*, 3 *S. & R.*, 248 ; *Parsons vs. Parsons*, 9, *N. H.* 509.   It is laid down by Bishop, on Marriage and Divorce, that the better opinion appears to be that the English courts of chancery have no power to entertain a bill for alimony supplemental to a parliamentary divorce.

The supreme court of Indiana refused to give a wife, who had been divorced in Kentucky, alimony out of her former husband's lands, situated in the former state.   *Fishlie vs. Fishlie*, 1 *Blackf.*, 360.   The court of chancery of New Jersey, holds that it has no power to decree alimony, except as concomitant with divorce, or under the statute of that state.   See *Yule vs. Yule*, 2d *Stock*, 138.   The supreme court of Missouri held in *Doyle vs. Doyle*, 26 *Mo.*, (5 *Jones*,) that it had no power to decree alimony, but as incidental to a divorce, except when the power is given by statute.

The case now before the court rests mainly upon its analogy to *Richardson vs Wilson*, 8 *Yerger*, 67.   But in that case both parties were residents of Tennessee, and the divorce was obtained by the husband without notice to the wife, but with an express saving of her right to alimony.

By the second marriage with another man, complainant closed the door of reconciliation in the face of the defendant, and also the door of the courts against admitting or even sustaining her supposed claim for alimony, out of the property of the injured and discharged husband.   When the vinculum of marriage is snapped, if the man dies, the woman will not be his "widow, nor entitled as such in dower and a portion of his personal property."

*Levins vs. Slatter*, 2*d Greene's Iowa Rep.*, 604; 27 *Maine* 212; 8 *Blackf.*, 218.

Alimony is sustenance given at the discretion of the court, to the wife out of the property of the husband. By the contract of marriage the husband assumes the duty and obligation to support his wife, and the law enforces this duty. If the husband is guilty of a breach of marital duty sufficient in extent and kind to justify a judicial separation, the law does not in consequence thereof release the husband from his obligation to maintain his wife, although the bonds of matrimony may be dissolved. But when the wife seeks and obtains a divorce *a vinculo*, and marries again, she thereby fixes upon another and different man, the obligation to support or maintain her. And two liabilities to pay alimony cannot exist at the same time; by accepting one and enjoying its benefits, she discharged the former. *Albee vs. Wyman*, 10*th Grey*, *p*. 230. The reason for awarding alimony, or the maintenance of the wife, in consequence of the second marriage failing, the law itself ceases.

If where alimony has been decreed, a subsequent marriage will abate it, or reduce it to a nominal sum, upon an inquest to inquire into the right of alimony, or an application to have alimony assigned, should not the subsequent marriage be deemed and considered a conclusive bar to the action? Can reasonable doubt interpose in a case so clear and so obviously just? Do not all our feelings revolt at the idea of requiring any man to pay alimony for the future support of another man's wife? In a late case decided in England, *Fisher vs. Fisher, Swabey & Tristram's Reports, page* 410, the effect of a second marriage after alimony or before alimony is expressly decided.

Mr. Justice CLENDENIN delivered the opinion of the court.

On the 13th of March, 1866, the complainant, Mary H. Bowman, filed her bill of complaint against Elisha Worthington; and afterwards, on the 26th of June, 1866, filed an amendment to said bill. It appears from the allegations of the original and

35

amended bills, that the complainant, on the 10th day of November, 1840, intermarried with the defendant in the state of Kentucky, and went to reside with her husband, in the state of Arkansas; that she lived with her husband in Arkansas about five months, when, in consequence of the adultery of her husband, she separated from him, and returned to the house of her parents in Kentucky, where she remained until the year 1843, when she applied to the legislature of that state for a divorce, and on the 4th of March, 1843, by a special act, in which many other persons were included, the bonds of matrimony between her and her husband were annulled on her part, and she was restored to all the rights and privileges of an unmarried person, and to her maiden name: [no cause for divorce was mentioned in the act of the legislature of Kentucky.] That she continued to live in her father's family in Kentucky until the 14th of October, 1847, when she intermarried with Benjamin H. Bowman, and after living for two years in Kentucky, removed with him to Louisiana, where they lived until his death, in 1854, when she returned again to Kentucky, and thenceforward resided with her parents: That Worthington was quite wealthy; that she demanded alimony of him, but he refused to pay any thing for her support, and proceeded to convey away his property, which was of the value of two hundred thousand dollars: That she never condoned his adultery, nor was herself guilty of any impropriety; and prays that alimony may be decreed to her. These are the substantial facts of the bill and amendment as pleaded.

To this bill, the defendant interposed his demurrer, setting out, among other things, the following causes:

1st. That the power of the circuit court to grant alimony depends entirely on the statute, by which alimony is dependent upon and incidental to a divorce from the bonds of matrimony, granted by the same court.

2d. That the marriage had been annulled by the act of the Kentucky legislature, and that alimony can only be awarded to a wife, *as such*, out of the property of her husband, *as such*, in

virtue of a subsisting marriage *status*, and that after a divorce granted, the court could have no jurisdiction of a bill for alimony.

3d. That the legislature which granted the divorce made ade: quate provision for the complainant, and the circuit court in Arkansas could not assume jurisdiction to try issues that might have been determined before that tribunal.

4th. That the relief sought is barred by lapse of time, and also by the statute.

6th. That the complainant married a second time. That would have revoked alimony if it had already been granted, and so created a bar to the relief sought.

The demurrer was sustained and the bill dismissed, and Mrs. Bowman appealed.

We have thus presented for our determination the questions raised by the bill and demurrer, which have never been decided by this court; and we have, consequently, bestowed upon them all the consideration which their delicacy and importance demand, and have given to the authorities cited by the counsel, and such others as our investigations have led us to, our earnest and thoughtful attention and reflection. Owing to the peculiar jurisdiction of the English courts upon this subject, until the year 1858, we have not been able to find that light and information which we expect to find, and do generally find, to aid us in our judgment in the adjudications made by the great and learned of the profession in the country from which we get the foundation of most of our law : nor have we found many cases in the American courts where the same points as in this were before the courts and adjudicated by them.

The application in this case is for alimony. We do not understand the bill to pray for any thing else.

By our statute of divorce, *chap. 59 Digest*, jurisdiction in divorce and matrimonial causes, including alimony, is conferred upon the circuit court, sitting as a court of chancery. The statute is an original provision, no part of the English ecclesiastical law having been expressly adopted in this state. Where by statute

jurisdiction over particular subjects of equity is conferred, or given to common law courts, the entire body of law administered in the equity courts of this country attaches to the matter immediately on the jurisdiction being created. But the subject of divorce and all incidental questions, including alimony and matrimonial causes, are not subjects of equitable jurisdiction. Courts of equity in England did not exercise jurisdiction over them ; they were confined to the ecclesiastical courts, they alone adjudicated upon them. During the commonwealth, the ecclesiastical courts were abolished, and the courts of chancery, for a time, in virtue of special authority given in their commissions, took jurisdiction of these causes, but after the restoration an act of parliament confirmatory was passed to justify this assumption of jurisdiction. The eccelsiastical courts in England retained exclusive jurisdiction of divorce and matrimonial causes, until the 20th or 21st year of Victoria by act of parliament the jurisdiction was transferred to a new court, styled "the court of divorce and matrimonial causes."

The circuit courts of this state, sitting as courts of chancery, have jurisdiction of all cases of divorce and alimony by virtue of the statute. The court, in cases of this kind, must look to and be governed by the statute; it has no other powers than those expressly conferred, and while it may sit as a court of chancery, it is not to be understood as exercising inherent chancery powers, but as a court limited and guided by express statutory provisions, over a subject matter never belonging to chancery jurisdiction. It is then the circuit court, invested expressly by statute with authority to investigate and try cases of this kind by rules of proceeding adopted and practiced by courts of chancery.

The question then arises, has the circuit court, sitting as a court of chancery, jurisdiction to grant the relief prayed for, and decree alimony?

Our statute points out the court that can entertain jurisdiction; it not only locates the jurisdiction, but it details the manner, the time when, and the circumstances under which alimony may be

adjudged, and the causes for which it may be adjudged. The first section of our statute, *chapter* 59, *Digest, Ark.*, enumerates the causes for which a divorce may be granted. The 3d section says: "The circuit court sitting as a court of chancery, shall have jurisdiction in all cases of divorce and alimony, or maintenance, and like process and proceedings shall be had in said cases, as are had in other cases on the equity side of the court, except that the answer of the defendant need not be under oath." The 4th section defines the necessary qualifications of the bill of complaint, and the 9th section provides that "when a decree shall be entered, the court shall make such order touching the alimony of the wife, and care of the children, if there be any, as from the circumstances of the parties and the nature of the case, shall be reasonable;" and in the 11th section, it is enacted that "the circuit court shall have power also to enforce the performance of any decree or order for alimony and maintenance, by sequestration of the defendant's property, or by such other lawful ways and means as are according to the rules and practice of the court."

Alimony is the allowance which a husband, by order of the court, pays to his wife being separate from him for her maintenance. *Bishop on Marriage and Divorce*, 549. This definition is substantially the same as that given by other American, and the English authorities, and may be said to be only applicable to divorces *a mensa et thoro*, because it presumes the relation of husband and wife still to exist, although the parties are separated by virtue of the decree of a competent court, and is peculiarly applicable to the divorces granted by the courts in England prior to the year 1858, for in England, previous to that year, no judicial divorces, dissolving the bonds of matrimony originally valid, were allowed.

The allowance of alimony may be for the use of the wife, either during the pendency of the suit, in which case it is called alimony *pendente lite*, or, after its termination, called permanent alimony. It has no common law existence as a separate independent right, but wherever found it comes as an incident to a

proceeding for some other purpose, as for divorce ; no court in England having any jurisdiction to grant it, where it is the only thing sought. *Bishop on Marriage and Divorce*, 550, and the authorities cited.

As we have before suggested, we have been able to find but few adjudications upon a point similar to the one we are now considering. In the case of *Shotwell vs. Shotwell*, 1 *Smedes & Marshall, Chancery Reports, page* 51, and which is a case and application similar to the one before us, except that there had been a judicial decree of a competent court of the state of Mississippi, dissolving the bonds of matrimony, the chancellor says, "That a separate suit by bill or petition, may be maintained for alimony, after a decree for a divorce in which such claim was omitted, if there was no express act of the wife waiving her right thereto." But this opinion of the chancellor was, we think, subsequently overruled by the supreme court of Mississippi, in the case of *Lawson vs. Shotwell*, 27 *Miss. Rep.*, 631, (and which appears to be a branch of the case of *Shotwell vs. Shotwell*.) The supreme court, in alluding to the decree for divorce that had been granted, and its effect and operation, say, "The constitution authorizing the legislature to give the circuit courts 'equity jurisdiction in all cases whereof the thing or amount in controversy does not exceed five hundred dollars ; also in all cases of divorce and for the foreclosure of mortgages ;' the legislature, by the act March 2, 1833, organizing the circuit courts among other things, declares in the language of the constitution, in defining the equity jurisdiction of those courts, that it shall extend to cases of divorce," etc. The court further say, "The question then comes up for decision whether the law, by investing the courts with full power to decree a divorce, intended that the court might go further and decree alimony, or an allowance to the wife out of the husband's property." "The authorities on this subject, almost without exceptions, agree that alimony is allowed only as in incident to some other proceedings, which may be legally instituted by the wife against the husband as such, for instance, as an action

for the restitution of conjugal rights, divorce, etc.; in which cases temporary alimony is allowed pending the suit, and permanent alimony on rendering the final decree in a divorce case, in favor of the wife." And the court again say that, "Having decided then, that the jurisdiction of the circuit court was full and complete in the divorce case, as to the matters now in controversy, at least so far as the claim for alimony is concerned, and the complainant having failed to ask a decree in this respect, the question is, whether the present bill shall be entertained by the superior court of chancery; while equity inclines, at the proper time and in the proper mode, to administer justice on a liberal scale, in favor of an injured wife, against a guilty husband, yet it can dispense with none of those statutory rules constituting part of the system, in her favor, any more than in the case of a less favored party. Matters which appropriately belonged to the case in the circuit court, and which might, by ordinary diligence, have been embraced in its decree, or final action, ought not, upon principles of policy, to be again litigated between the same parties in another court." And the court, after saying that the bill cannot be entertained, say, "We do not intend to intimate that there may not be cases in which an original bill, after a decree for a divorce, could not be maintained. A good reason must be alleged why the alimony was not at the proper time allowed. What will be a good reason, must depend upon the facts of the case when presented."

Another case, to which our attention has been drawn by the counsel of Mrs. Bowman, is the case of *Richardson vs. Wilson*, 8 *Yerger*, 67. This is a peculiar case, and if the courts of Tennessee had the equitable jurisdiction to entertain it, (which we are to suppose from the decision they had) particularly addressed itself to their consideration. Wilson, the husband, presented to the legislature of Tennessee, a petition for divorce, without the knowledge of the wife, and the legislature passed an act divorcing the parties, which act contained a proviso: "That nothing in this act shall deprive the said Mary Ann, of her right to alimony,

if by law she is entitled to the same." The wife brought her bill for alimony, and Wilson defended, armed as he supposed with the weapon he himself had procured from the legislature, but the court decided that it cut both ways, that while it cut him loose from the bonds of matrimony, it carved out of his estate a maintenance and support for her who had been his wife—intimating also, that even without the proviso to the act, the court would have maintained her right to alimony. Justice PECK, (concurring with Chief Justice CATRON, who had delivered an opinion) in an opinion replete with interest, says: "If the legislature have, while the act of 1799 was in force, stepped in the place of judicial authority and granted the divorce, cannot the courts of justice take up the cause, exactly where the legislature left it, and make inquiry, as if the divorce had been then and there granted by the court."

We are not advised what are the particular features of the act of 1799 of the state of Tennessee, under which the court acted, so as to be able to compare it with the provisions of our statute, under which we are called to decide.

We have also been referred to the case of *Fishlie vs. Fishlie*, 1*st Blackford*, 360, as in point to strengthen the position that a bill for alimony as a separate claim cannot be maintained, but as we have not been able to procure the volume referred to, we can only refer to it, as we find it alluded to approvingly by Mr. Bishop in his well considered work on marriage and divorce.

The only direct decision upon this point we have been able to procure, made by the English courts since the passage of the act 20 and 21 Victoria, establishing a court for dower and matrimonial causes, is the case of *Winstone vs. Winstone and Dyne*, 3 *Swabey & Tristam's Reports*, 245; and from the section of the law given in the opinion, it will be seen that it is like our statute, a law giving to a court jurisdiction in certain and specified cases. The case was a petition for permanent alimony after a decree for dissolution. The 32d section of the law by which the court acquired jurisdiction to decree alimony is : " The court may, if it

shall think fit, on any such decree ( i. e. for dissolution of marriage) order that the husband shall, to the satisfaction of the
court, secure to the wife, such gross sum of money or such annual
sum of money, for any term not exceeding her own life, as, having regard to her fortune, if any, to the ability of the husband,
and the conduct of the parties it shall deem reasonable." After
referring to the circumstances in the case, the judge ordinary
says : " This is a novel attempt with respect to permanent alimony," " any thing in the nature of permanent alimony in a case
of dissolution of marriage is the creature of the 32d section of
the divorce act. I cannot think that the 32d section intended
that after a decree *nisi* of dissolution obtained against the wife
she should be at liberty to file her petition for alimony."

BISHOP, in his work on marriage and divorce, 553, 554, after
referring to some of the courts that had maintained the chancery
jurisdiction to grant alimony, says : " The inherent jurisdiction to
grant alimony is also acknowledged in Virginia, Kentucky, in
South Carolina and in Alabama," referring to cases in those states.
But he says, "these are exceptions to the general rule, and departures likewise from principle. In some of the other states,
the jurisdiction has been expressly denied, in some others by
necessary implication, and probably it could not now be established in any state where it had not already been maintained,
though there is some strength of argument and some apparent
weight of authority in favor of the jurisdiction."

From the views thus given, and the authorities we have
examined, we have come to the conclusion that alimony being
an incident to the divorce, by the peculiar phraseology of our
statute, the courts of this state can only so grant it, and that in
connection with the decree, and that the circuit court has not
jurisdiction to entertain a separate application for alimony.

We have arrived at this conclusion with some reluctance, for
we would have preferred, if we could have done so consistently
with our views of the law, to have favored the jurisdiction, that
the complainant might have got the relief she asked ; but we

believe she is now without the remedy she might have availed herself of at the time she was compelled by the conduct of her husband to leave him. In 1841, when she left her husband, the same law was in force that is in force now, and she could have availed herself of it, and got such relief as the law and the courts can give in such cases; she then had a right and a remedy to enforce her right; but she thought proper to resort to a tribunal in her native state and it granted her all she asked—to be released from an unkind and adulterous husband, and to be restored to her maiden name.

But should we be mistaken in the view we have taken of this point in the case, there is another raised by the bill and demurrer, which we think would defeat the application.

The bill shows that the complainant was divorced by the legislature of Kentucky in 1843, and that in 1847, she married Benjamin H. Bowman, who died in 1854, and that she is now the widow of Bowman. In this state of facts, and taking the broadest definition of alimony, that it is that portion of the estate of the husband which the court allows to the wife, on her divorce from him, for her support and maintenance, can we say that she is now entitled to such support and maintenance? She is the widow of Bowman, and as such entitled to dower in his estate. If she is entitled to alimony now, she would have been so in 1847, after her second marriage, and if suit had been brought in his life time, he must have joined his wife in such suit, and the second husband and his wife would prosecute the first husband for the maintenance and support of the wife. We do not suppose the law ever contemplated or would encourage such a proceeding.

By the contract of marriage the husband assumes the obligation to support his wife. It is his duty to do so, and the law will enforce the duty, and although the bonds of matrimony be dissolved, still if the wife claims it in proper time, and before the proper tribunal, the law will enforce her claim. But when the wife seeks a divorce *a vinculo*, and marries again, she fixes upon the new husband the obligation to support her. If the complainant

in this case had presented her application for divorce and alimony under our statute, and she had been divorced and alimony assigned to her, and she had again married, we have no doubt it would have been in the power of the court that granted the divorce and allowed the alimony, to have ordered its payment to cease; and upon this point, the effect of a second marriage, we have the light of direct adjudication.

In this case of *Albee vs. Wayman*, 10 *Grey*, 222, a divorce *a vinculo* and alimony had been decreed. Mrs. Wayman married again, and in consequence of that marriage, the court say, "the application for a divorce and alimony was her own affair, a voluntary act of hers, instituted for her benefit; so long as she remained unmarried, no ground existed for lessening the amount of such alimony, while of course it was open to her application for increase for good cause. By her act of subsequent marriage, she secured herself other resources for her support, and thus voluntarily furnished the ground for the reduction of the alimony;" and it was reduced to a nominal amount.

In the case of *Fisher vs. Fisher*, 2d *Swabey & Tristam's Reports*, 411, the court say: "If hereafter the petitioner" (who had petitioned for divorce and alimony) "should become guilty of immorality, it would be unreasonable to call upon the former husband to maintain her. Again, if she avails herself of the freedom conferred by the decree of this court, and marries again, it would be unreasonable to compel the former husband to support her." And, again, in the case of *Sidney vs. Sidney*, 4, *Swabey & Tristam's Reports*, 180, the same doctrine is announced.

These authorities we think to be in accordance with the law, with propriety and good sense; and we therefore hold, because of the second marriage, the complainant in this case is not entitled to have maintenance and support decreed to her from her first husband. And having disposed of the case upon the two points considered, we deem it unnecessary to consider or decide upon the others made by the demurrer.

The decree of the circuit court dismissing the bill is affirmed.