Bodie v. Bates.

APPEAL from the district court for Red Willow county: ERNEST B. PERRY, JUDGE. *Reversed and dismissed.*

*C. E. Eldred,* for appellant.

*W. S. Morlan, contra.*

FAWCETT, J.

---

LUCIE BODIE, APPELLEE, v. EDWARD BATES, APPELLANT.

FILED JANUARY 15, 1916. No. 19146.

1. **Divorce:** JURISDICTION. In the state of Arkansas, divorce and all incidental questions, including alimony and matrimonial causes, are not subjects of equitable jurisdiction. In such cases the courts of that state have no other powers than those expressly conferred by the statute. *Bowman* v. *Worthington,* 24 Ark. 522.

2. ———: PROPERTY RIGHTS: STATUTES: CONSTRUCTION. Sections 2681, 2684, Kirby's Digest of the Statutes of Arkansas, set out in the opinion, examined, and *held,* that section 2681 applies to cases where a husband obtains a decree of divorce against his wife, and section 2684 to cases where the decree is granted to the wife against her husband.

3. ———: ———: ———. Section 2684, Kirby's Digest of the Statutes of Arkansas, examined, and *held* to expressly determine just what interest a wife shall take in both real and personal property

Bodie v. Bates.

of her husband where she is granted a divorce, and that under that statute the Arkansas court could not have vested in plaintiff in this suit, who was defendant there, an interest for life, or other interest, in the land of which her husband was then seised located in Nebraska.

4. ———: ALIMONY. The pleadings and decree of the court of chancery in Arkansas examined, and *held* to have allowed plaintiff, as alimony, the sum of $2,611, and no more; and that such sum was the amount which she was entitled to receive out of the estate of defendant, located in the state of Arkansas.

5. Judgment: RES JUDICATA. "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit." *Russell v. Place*, 94 U. S. 606.

6. ———: ESTOPPEL. "The general principles governing the pleading and proof of former judgments as estoppels are now quite well settled by so long a line of authorities that it is useless to review them. Generally speaking, in order that a judgment in one action shall operate as an estoppel in a second action, it must be made to appear, not only that there was a substantial identity of issues, but that the issue as to which the estoppel is pleaded was in the former action actually determined." *Slater v. Skirving*, 51 Neb. 108.

7. Divorce: ALIMONY. The evidence in the record, taken in connection with the pleadings and decree in the chancery court of Arkansas, and the then value of the real estate owned by defendant in the state of Nebraska, *held* to conclusively show that the court of chancery in Arkansas did not take the Nebraska land into account in fixing the amount of alimony allowed plaintiff.

8. Estoppel: INCONSISTENT CONTENTIONS. A party cannot in one litigation insist that the court has no jurisdiction of specified property and succeed in that contention, and afterwards in another litigation with the same party insist that the court did have jurisdiction of that particular property and should have adjudicated it in the former action contrary to his contention there made, and so defeat an adjudication thereof entirely.

9. Divorce: ALIMONY: JURISDICTION. The Arkansas court being without jurisdiction to take the Nebraska land into account in fixing the amount of alimony allowed plaintiff, and having for that rea-

son refused so to do, its judgment was right, and an appeal there-from would have been unavailing.

10. ——— : ——— : FOREIGN JUDGMENT: FULL FAITH AND CREDIT. The contention that the decree in this case does not give full faith and credit to the judgment of a sister state is without merit.

11. Former Opinion: LAW OF THE CASE. The opinion on the former hearing in this case, 95 Neb. 757, in so far as it is applicable to the facts now appearing in the record, is adhered to as the law of the case.

APPEAL from the district court for York county: ED-WARD E. GOOD, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts, W. L. Kirkpatrick* and *J. Wythe Walker,* for appellant.

*S. P. Davidson* and *Gilbert Brothers, contra.*

FAWCETT, J.

On the first trial of this cause in the district court for York county, a general demurrer to the petition was sustained and plaintiff appealed to this court. We found that the petition stated a cause of action, and the judgment was reversed and the cause remanded for trial. 95 Neb. 757. The trial in the district court after the case was remanded resulted in a decree in favor of plaintiff for $10,000 alimony. Defendant appeals.

Our former opinion contains quite a full recital of the troubles of plaintiff and defendant, while husband and wife, and a sufficient statement of the issues involved in this suit. The parties were divorced March 2, 1911, in the court of chancery in Benton county, Arkansas, and plaintiff, by the decree in that case, was restored to her maiden name of Bodie, which accounts for the difference in the names of the parties in the present suit. As reference will frequently be made in this opinion to the parties as they appear in the Arkansas suit and as they appear in the present suit, we will, for the purpose of avoiding any confusion as to the parties, refer to the plaintiff in this suit, who was the defendant in the Arkansas court, as "Bodie" and to her former husband, defendant in this suit, as

"Bates." In the Arkansas court Bates instituted the suit for divorce, alleging infidelity and other misconduct. Bodie denied the allegations of the petition and prayed for a decree of divorce in her favor. She alleged the property of Bates in Arkansas, and also alleged that he was the owner of real estate in Nebraska of the value of $48,000, and prayed judgment and alimony. Bates and his counsel there contended on the trial of that suit that, under the law of Arkansas, the court in fixing the amount of alimony could not take into consideration the Nebraska land and allow the wife alimony on account of the value of such land. This contention was sound. The rule is settled in Arkansas that "in divorce cases the court of equity must look to and be governed by the statute, and cannot exercise inherent chancery powers not provided by the statute." *Ex-parte Helmert,* 103 Ark. 571. "Where by statute jurisdiction over particular subjects of equity is conferred, or given to common law courts, the entire body of law administered in the equity courts of this country attaches; but the subject of divorce and all incidental questions, including alimony and matrimonial causes, are not subjects of equitable jurisdiction; and in such cases the courts have no other powers than those expressly conferred by the statute."*Bowman v. Worthington,* 24 Ark. 522. See, also, *Thomas v. Thomas,* 27 Okla. 784.

In our former opinion we determined (p. 762): "An examination of the Arkansas statute above set out shows that in that state no provision is made authorizing a money judgment as alimony. The law expressly declares just what interest the wife shall take in both the real and personal property of her husband, where she is granted a divorce. As to real estate, the provision is that she shall be entitled to 'one-third of all lands of which her husband is seised of an estate of inheritance at any time during the marriage for her life, unless the same shall have been released by her in legal form.' It will not, of course, be contended by any one that under that statute the Arkansas court could have vested in Mrs. Bates, for life, one-third

Bodie v. Bates.

of the lands of which her husband was then seised located in Nebraska. That provision unquestionably refers to lands situated within the jurisdiction of the court." . We also decided (p. 763) : "It is clear, therefore, that as to the Nebraska land, the rights of the parties were not adjudicated in that action." There is some contention now that our former decision as to the effect of the Arkansas statute, and as to the fact that the Arkansas court did not allow alimony on account of the York county land, should not be considered as the law of the case because of the evidence which was introduced upon the trial from which this appeal is taken. The Arkansas statute referred to in the opinion, so far as it is pleaded and proved in the case, reads as follows: "And where the divorce is granted to the wife, the court shall make an order that each party be restored to all property not disposed of at the commencement of the action which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and the wife so granted a divorce against the husband shall be entitled to one-third of the husband's personal property absolutely, and one-third of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage for her life, unless the same shall have been relinquished by her in legal form." Kirby's Digest, sec. 2684. The record now shows that there is a prior section of the statute of Arkansas which provides: "When a decree shall be entered, the court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable." Kirby's Digest, sec. 2681. Can these two sections of the statute be construed together, or must they be distinguished and construed to apply to different conditions or situations? That they cannot be construed together is apparent upon their face, for they are directly contradictory. The statute first above quoted, which prescribes specifically what shall be allowed the wife as alimony when

99 Neb. 17

she is "so granted a divorce against the husband," is a later statute than section 2681, above quoted. Section 83, p. 936, 1 R. C. L., shows very clearly why section 2681 was enacted by the Arkansas legislature, viz.: "According to the rule of the common law, where a divorce was granted for the misconduct of the wife, she was not entitled to alimony. This was productive of so much hardship, however, and so frequently left her a prey to starvation or a life of shame, especially where her own property had become vested in her husband by reason of the marriage, that statutes have been enacted in England and a number of the United States authorizing the courts to make such an allowance of alimony in favor of a guilty wife as the surrounding circumstances may justify." Two of the states cited in this text are Arkansas and Oklahoma.

In *Ecker v. Ecker*, 22 Okla. 873, we have a discussion of this identical section, viz.: "The second assignment of error urged is to that part of the master's report recommending that defendant be awarded, and to that part of the judgment awarding to defendant, one-half of plaintiff's property or one-half of its value. At common law a delinquent wife, on account of whose conduct the husband obtained a divorce, was not entitled to receive alimony, but in a number of the states, including the state of Arkansas, from which state the statutes in force in the Indian Territory were adopted, the common law has been modified by statute. The statute governing in this case reads: (The section of the statute quoted in the opinion is a verbatim copy of 2681, Kirby's Digest, under consideration in this case.) Under the language of this statute, or similar language of the statutes of other states, the courts have held that the authority of the court to make orders touching the alimony of the wife is not limited to those cases in which she prevails, or that whether the guilty wife will be granted alimony and the amount thereof is within the discretionary power of the court, to be controlled by the circumstances of each case. (Citing cases.) It is, however, a discretion that a court should at all times

exercise with a great care, and it should not be exercised in favor of the guilty wife when there are no mitigating circumstances. In the case at bar the wife is guilty of gross misconduct, but the husband has not been free from fault. The finding of the master is that the conduct of each party toward the other has been such as to render their living together as husband and wife intolerable. There is nothing in the master's report as to whom he finds the more culpable, except that he recommends that the husband be granted a divorce." The trial court ordered an equal division of the property or that defendant have judgment for one-half of the value of the same. This judgment was held erroneous, the holding being based on section 2568, enough of which is set out to show that that section is a duplicate of section 2684 in this case.

In *Pryor v. Pryor*, 88 Ark. 302, it is said: "The first question presented is whether or not the chancery court had jurisdiction to decree an allowance of alimony to a guilty wife against whom a decree for divorce was granted." The court then quotes from 2 Nelson, Divorce and Separation, sec. 907, where the question of the allowance of alimony to a wife, when the husband has obtained a divorce, is discussed along the same lines as the discussion in 1 R. C. L., above cited. The court then say: "A statute of this state provides that." The court here quotes section 2681, Kirby's Digest, and then adds: "Similar statutes in other states have been construed to have enlarged the powers of courts in divorce cases so as to empower them to allow alimony in any case, even to a guilty wife."

The above authorities clearly show just what the legislature intended when it enacted section 2681, viz.: That this section was enacted in order to permit the chancery courts of the state to award alimony to the wife in cases where the divorce was obtained at the suit of the husband on account of her misconduct. In such cases the legislature very properly left it to the court to make "such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties

and the nature of the case shall be reasonable." But when, later on in the act, the legislature considers the question as to what a wife shall be entitled to receive when a divorce is granted to her against her husband for his wrongdoing, they enacted section 2684, above quoted. Otherwise, why do they use the language "where the divorce is granted to the wife," and the further expression, "and the wife so granted a divorce against the husband shall be entitled," etc. It is clear that the purpose of the legislature was that the amount which the wife should receive in such a case should not be enshrouded in any uncertainty by leaving it to the discretion of the court to say what should be a reasonable allowance to her, but fixed the amount, definitely, as to both the real and personal estate. There is nothing ambiguous in this section of the statute. Its terms are too plain to be misunderstood. It is clear, therefore, that the allegation in the petition in this suit that section 2684 of Kirby's Digest was the only statute in force in Arkansas, at the time of the trial of the suit there, which provided for the allowance of alimony in a case where a divorce was granted to the wife as against the husband is a correct statement of the law. Section 2681 has no application whatever to such a case. In this manner, and in no other, can effect be given to each of the two statutes under consideration. It will be seen that the allowance of alimony to the wife, when a divorce is granted for her fault, rests upon an entirely different basis than when the divorce is granted in her favor, and it is common in the United States, as above shown, to make that distinction by statute. There can be no doubt, therefore, that the general rule that a specific statute on a given subject will control as against a general statute that might include the same subject in the absence of a specific statute applies here, and that the statute quoted in our former opinion, being section 2684, controls the courts of Arkansas in all cases where a divorce is granted in favor of the wife. In such case the court is required to divide the personal property, to give her one-third thereof "abso-

lutely," and to give her a life estate of one-third of the husband's lands. The Arkansas court could not secure to the wife the use of real estate outside of the jurisdiction of the court.

In *Wood v. Wood*, 59 Ark. 441, 452, it is said: "Appellant did not undertake to show, in her original or amended bill for divorce, that she was entitled to the benefits of the act of March 2, 1891. Her original bill was filed before it was passed, and it was not amended thereafter in that respect. For the purpose of showing that she was entitled to considerable alimony, she alleged in the original bill that the defendant was not worth less than $200,000, but did not say in what his estate consisted, or that it was within the jurisdiction of the court. No information is given to show that the court had the jurisdiction, by reason of the quality and location of the property, to set apart to her one-third of it under the act. It might have been real estate situate in another state. Nothing appears in the record, outside of the evidence, to show that the court committed an error of law in failing to divide the estate of the husband in accordance with the act."

We are unable to read that language of the court and reach any other conclusion than that the law of Arkansas limits the jurisdiction of a court of chancery in fixing alimony in a divorce case to property within the jurisdiction of the court. There was, then, just ground for the contention in the Arkansas court that that court had no jurisdiction to allow the wife alimony on account of the real estate of the husband in Nebraska. Was such a contention made? It is conceded, and the record before us clearly shows, that defendant did, with the help of able counsel, strenuously contend in the Arkansas court that that court could not in that case allow alimony to Bodie on account of the Nebraska lands. And the record also shows that the court did not in fact make any allowance on account of the Nebraska lands. It is shown by the overwhelming weight of the evidence before us that the Arkansas court allowed Bodie $5,111 "in full of alimony

and all other demands set forth in the cross-bill." The only demand set forth in the cross-bill, outside of alimony, was the restoration to her of $2,500 which she had loaned to Bates when they were living together as husband and wife. Deduct this sum from $5,111, and it will be seen that the total amount allowed for alimony was $2,611. Under the admissions of Bates and the uncontradicted evidence, he, at the time of the divorce trial, owned personal property and notes and mortgages within the jurisdiction of the Arkansas court, amounting in the aggregate to $7,-000, and a house and lot, also within the jurisdiction of the court, worth $2,500. Under the statute Bodie was entitled "absolutely" to one-third of the $7,000 of personal property, or $2,333.33. She was also entitled to the present value of a one-third interest for life in the house and lot. If we figure that life interest at only $278, it would make her statutory interest in the property of Bates, situated in Arkansas $2,611, being the sum allowed as alimony by that court. Hence, it is idle to say that the chancellor considered the Nebraska land in fixing the amount of alimony. If he "considered" it, he considered it only to the extent of determining that he had no jurisdiction to take it into account in fixing the amount of alimony. It would be a travesty, not only upon the law, but upon the commonest principles of justice, for us to hold that the chancellor, when he decided the divorce case and allowed Bodie $2,611 of alimony, took into consideration personal property of the value of $7,-000 and real estate to the value of $2,500, located within the jurisdiction of his court, and also took into consideration the value of real estate in this state which the decree before us finds was worth $40,000 at the time the chancellor in Arkansas tried that case. If, in addition to the property within his jurisdiction, he had also taken into account the present value of an estate for life in one-third of land in Nebraska, worth $40,000, the amount which he would have been compelled to allow would have far exceeded the value of all the property which Bates owned in

Arkansas at that time. If he took into consideration the land in Nebraska, he was bound to consider it in the light of the law of Arkansas which would require him to allow her a life estate of one-third interest in the Nebraska land. He allowed her, all told, $2,611. Further comment is unnecessary. *Res ipsa loquitur.*

From what has just been said, it will be seen that defendant succeeded in his contentions in the Arkansas court that that court was without jurisdiction, and prevented any allowance on account of the Nebraska land. He now, in this case, says that his contentions there were unwarranted, that the court did have jurisdiction, and by these inconsistent positions he insists that he has defeated the just claims of his wife. This, of course, he cannot be allowed to do.

In *Cross v. Levy,* 57 Miss. 634, it was held that a party who had agreed that a justice of the peace had jurisdiction of a case could not afterwards, as against the same party, contend that the justice did not have such jurisdiction. In *Long v. Lockman,* 135 Fed. 197, it was held that a party, who, in a suit in the district court of the Arkansas district, had alleged that the district court of the Colorado district had exclusive jurisdiction of the case and upon that contention had procured the case to be dismissed by the court of the Arkansas district, could not afterwards be heard to contend against the same party that the court of the Colorado district was without jurisdiction when sued in that district. The court said: "In my opinion, Williams in his lifetime was, and the administrator now is, estopped from denying that his residence was in Colorado when the petition herein was filed. * * * Every element of estoppel is in the evidence, and the evidence on that question is not in conflict. Williams, under oath, said his residence was in Colorado. He received the advantage from that oath. The petitioning creditors acted on it. They filed their petition here. They have incurred much expense by reason of that oath. It cannot now be controverted. * * * I pass those questions by, and hold that

this court has jurisdiction upon the grounds of estoppel. And that filing pleadings, offering evidence, making objections, obtaining rulings, and so forth, in one case, may be an estoppel in another case, see the following"—citing many cases. A party is estopped to deny facts pleaded to defeat jurisdiction of court. *Caldwell v. Morris,* 120 La. 879, 15 L. R. A. n. s. 423, and cases cited in note. He cannot in one litigation insist that the court has no jurisdiction of specified property and succeed in that contention, and afterwards in another litigation with the same parties insist that the court did have jurisdiction of that particular property and should have adjudicated it in the former action, and so defeat any adjudication thereof entirely.

Is the judgment in the Arkansas court *res judicata?* *Thomas v. Thomas,* 27 Okla. 784, construing an exactly similar statute, cites *Bowman v. Worthington, supra,* and quotes with approval the holding in that case above set out, and adds: "The trial court not possessing jurisdiction to entertain the question of the disposition of this property in the divorce proceeding, the same did not become *res adjudicata* by reason of that action, hence is left open for determination in this case."

*Matson v. Poncin,* 152 Ia. 569, holds: "A judgment to be available as an estoppel must have decided the particular matter involved in the later suit; it is not sufficient that the same question may have been determined."

In 1 Herman, Estoppel and Res Judicata, sec. 252, it is said: "The rule that estoppels must be certain to every intent, and precise and clear, is peculiarly applicable to estoppels by record and judicial proceedings; and, for this reason the record of a judgment must show with some degree of certainty the precise points determined, and not from inference or argument; and, where it gives no indications at all of what particular matters were adjudicated, it leaves the question unsettled, and is not available either as an estoppel or anything else, but merely evidence of its own existence. The conclusive effect of a judicial decision

cannot be extended by argument or implication to matters which were not determined. An estoppel by judgment is never inferred unless the basis on which it rests is such as to lead to the conclusion that the whole subject was litigated and adjudicated." See also, Wells, Res Adjudicata, sec. 223.

In *Packet Co. v. Sickles*, 72 U. S. 580, 592, it is said: "As we understand the rule in respect to the conclusiveness of the verdict and judgment in a former trial between the same parties, when the judgment is used in pleading as a technical estoppel, or is relied on by way of evidence as conclusive, *per se,* it must appear, by the record of the prior suit, that the particular controversy sought to be concluded was necessarily tried and determined—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter, it will be considered as having settled that matter as to all future actions between the parties; and further, in cases where the record itself does not show that the matter was necessarily and directly found by the jury, evidence *aliunde* consistent with the record may be received to prove the fact; but, even where it appears from the extrinsic evidence that the matter was properly within the issue controverted in the former suit, if it be not shown that the verdict and judgment necessarily involved its consideration and determination, it will not be concluded."

In *Russell v. Place,* 94 U. S. 606, the court, speaking through Mr. Justice Field, said: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have

been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered —the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined.    To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

In *Mercer Co. v. City of Omaha,* 76 Neb. 289, the first paragraph of the syllabus holds: "The rule is well settled, both in this state and elsewhere, that a judgment is an estoppel only as to those matters actually in issue and tried and determined in the action in which it is rendered."

Finally, we cite *Slater v. Skirving,* 51 Neb. 108. The opinion in this case was by Mr. Commissioner Irvine. It shows a very careful consideration by that talented commissioner of a plea of *res judicata.*    Beginning on the fourth line from the bottom of page 112, it is said: "The general principles governing the pleading and proof of former judgments as estoppels are now quite well settled by so long a line of authorities that it is useless to review them.    Generally speaking, in order that a judgment in one action shall operate as an estoppel in a second action, it must be made to appear not only that there was a substantial identity of issues, but that the issue as to which the estoppel is pleaded was in the former action actually determined; and, where the record is uncertain, parol evidence is admissible to show what issues were determined in the former suit (citing case), and we think that, while the authorities are conflicting, their greater weight is in favor of the view that the burden of proof is upon the party pleading the estoppel to establish the fact of the adjudication by extrinsic evidence if necessary, and not upon the other party to show that an issue which might have been adjudicated was not."

*Slater v. Skirving* cast the burden in this case upon the defendant to sustain his plea by establishing the fact of the actual determination, in the former trial, of the issues involved here, and under the other authorities cited that proof must be clear to the extent of leaving no room for doubt.

Judge Humphreys, who presided at the trial of the case in Arkansas, was called as a witness in this case. He was interrogated as to whether he took into consideration any ownership or equity of Bates in the land in Nebraska. His answer was: "I think I did; it was my intention to cover the whole case." He stated that he was testifying from his best recollection, but a reading of his entire testimony will show that his recollection was not any too clear. Bates, himself, and Mr. Walker, his attorney at the Arkansas trial, both testified that the chancellor took the Nebraska land into consideration in determining the amount which should be allowed Bodie as alimony. This testimony is controverted by the testimony of Mr. Lindsey, Mr. Shannon, Judge McGill, and Judge Davidson, all of whom were present and participating in the trial as counsel for Bodie at the time the chancellor rendered his decision, and by Mr. Heaslet, clerk of the court of chancery in which the case was tried. These five witnesses all testified clearly and explicitly that the chancellor announced from the bench at the time he decided the case that he did not have jurisdiction over the Nebraska land, and could not consider the same. The four lawyers representing Bodie are gentlemen of high standing in the profession of the law, and, with the exception of Judge Davidson, have no present interest in the litigation. Mr. Heaslet was clerk of the court, and his testimony stamps him as a candid and truthful gentleman. There is nothing to show that he is in any manner interested in either of the parties to the suit, and it cannot be supposed that he would have any motive in giving testimony about a transaction in the court of which he was clerk, at variance with that given by his presiding judge. When you add to the

Bodie v. Bates.

testimony of these five witnesses the fact that the court could not have taken the Nebraska land into consideration in making his allowance, as hereinbefore shown, the district court before which the suit at bar was tried could not have done otherwise than to credit the testimony of the five witnesses, corroborated by the facts so clearly shown, and .discredit the testimony of the three witnesses to the contrary.   Under the evidence above set out and the authorities cited, it is clear that the record now before us sustains the allegations in the petition which our former judgment held stated a good cause of action, and fully sustains every point decided in our former opinion. There is therefore no reason why that opinion should be departed from or in anywise modified.

It is urged that the failure of Bodie to prosecute an appeal from the decree of the Arkansas court is a bar to the present suit.   For the reasons above stated, this contention is without merit.   The Arkansas court being without jurisdiction to take the Nebraska land into account in fixing the amount of alimony, and having refused so to do, its judgment was right, and an appeal would have been unavailing.   There was nothing to appeal from.   Nor is there any merit in the contention that the decree in this case does not give full faith and credit to the judgment of a sister state.

On the trial of this case the learned trial court followed our former decision.   He was fully justified under the evidence in doing so, and we cannot, without violating every principle of law and justice, reverse his judgment. If he erred at all, it was in not allowing Bodie more than $10,000.

The judgment of the district court dismissing the petition of intervention of the interveners is so clearly right that we shall not spend time discussing it.

The motion of plaintiff for an allowance of attorney's fees is overruled.   The judgment of the district court is in all respects

AFFIRMED.

SEDGWICK, J., concurring.

No one denies that there was at least serious doubt as to the jurisdiction of the Arkansas court to give the wife anything on account of the Nebraska land. Their statutes expressly provided that, when the wife obtained the divorce, the court should give her one-third of the personal property and the use of one-third of the husband's real estate during her life. The court could not give her the use of real estate that was not within the jurisdiction of the court. That proposition was contested vigorously before the Arkansas court, the husband contending earnestly by his attorneys that the court could not give her anything on account of foreign land, and the court, as is demonstrated from the record, did not give her anything.

It appears conclusively from the record that the Arkansas court allowed her the money which she had loaned to the defendant, and the one-third of his personal property there in Arkansas, and the value of her life interest in the real estate that he had there. These items added together make the exact amount that the court allowed her, so that the record speaks for itself that the Arkansas court did not as a matter of fact give her anything on account of the York county land.

In *Cizek v. Cizek*, 76 Neb. 797, it was decided: "Under section 27, ch. 25, Comp. St. 1905, the district court has a continuing power, after a decree of divorce and alimony has been granted, to review and revise the provisions for alimony at its subsequent terms on petition of either of the parties." In the opinion the court said: "In the case at bar a good and sufficient reason is shown why the former decree for alimony should be modified.   *   *   * Having demonstrated that the attempted adjudication of the court upon the question of alimony was nugatory and of no effect, he cannot now be heard to urge it is a final adjudication of the matter." So in this case the defendant on this trial insisted that the court could not give plaintiff anything on account of the Nebraska land. The

court did not give her anything. "He cannot now be heard to urge it as a final adjudication of the matter."

ROSE, J., dissenting.

The simple question presented by the appeal should have been determined as follows: An independent suit in equity to recover additional alimony based on defendant's ownership of land in Nebraska should be dismissed, where the uncontradicted evidence shows that plaintiff had procured a divorce and alimony in another state in a court having jurisdiction to consider the Nebraska land in awarding alimony, that both parties had appeared therein in person and by counsel, that each had asked for affirmative relief, and that the value of defendant's interest in the Nebraska land had been made the subject of pleading, proof and argument.

For the purpose of stripping from the controversy conflicting proofs relating to extraneous facts and confusing principles of law foreign to the issues, I prefer to make my own statement of the case.

Plaintiff had been the wife of defendant, and, in the court of chancery for Benton county, Arkansas, had procured a decree of divorce and alimony on a cross-bill filed by her in a divorce suit instituted by her husband. The Arkansas court granted the divorce March 2, 1911, allowing "$5,111 in full of alimony and all other demands set forth in the cross-bill." From that judgment no appeal was taken. The petition in the present case was filed in the district court for York county, Nebraska, November 24, 1911. It contains the plea that defendant owns in York county, Nebraska, lands worth $48,000, which the Arkansas court had no jurisdiction to, and did not, consider in awarding alimony. To the petition for additional alimony defendant demurred on the ground that the Arkansas decree is a bar to a further recovery and the plaintiff is defeated by estoppel, because she accepted and retained the fruits of the former adjudication. The trial court sustained the demurrer, and, from a dismissal of the action for additional alimony, plaintiff appealed to this court,

where it was held the petition showed on its face that the Arkansas court had no jurisdiction to, and did not, consider defendant's York county lands in awarding alimony. The dismissal, consequently, was reversed and the cause remanded for further proceedings. *Bodie v. Bates,* 95 Neb. 757. A trial on the merits of the case resulted in a decree awarding plaintiff additional alimony in the sum of $10,000. Defendant has appealed.

The question raised may be stated as follows: Under the facts pleaded and proved in the present case, did the court of chancery of Benton county, Arkansas, have jurisdiction to consider the value of defendant's Nebraska lands in determining the amount of alimony to which plaintiff was entitled? If this inquiry should be answered in the affirmative, the question now in controversy was adjudicated in the former action for divorce. In that suit both parties appeared before the court in person and by counsel, each asking for affirmative relief. Defendant's interest in the York county land was there put in issue by the pleadings. Proof of its value was adduced at great length. Whether the Arkansas court, in determining the amount of plaintiff's alimony, had jurisdiction to consider defendant's Nebraska land in York county was a question argued at the trial of the action for a divorce.

It is the policy of the law to determine in one action litigable questions relating to divorce and alimony, unless the legislature has otherwise provided. Society's interest in proper domestic relations and the rights of parties to a suit for a divorce require a complete adjudication in a single action, where jurisdiction to sever marital relations and to adjust property rights exists. Owing to a controversy over the power of an Arkansas court to consider the value of Nebraska land in awarding alimony, the parties have been permitted to narrate in the courts of two states the unhappy and distressing incidents of their married life.

The former appeal presented the sufficiency of a petition alleging that the following provision of an Arkansas

statute was the only law of that state authorizing the allowance of alimony to a wife in case of a divorce.

"Where the divorce is granted to the wife, the court shall make an order that each party be restored to all property not disposed of at the commencement of the action which either party obtained from or through the other during the marriage and in consideration or by reason thereof; and the wife so granted a divorce against the husband shall be entitled to one-third of the husband's personal property absolutely, and one-third of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage for her life, unless the same shall have been relinquished by her in legal form." Kirby's Digest of the Statutes (1904) sec. 2684.

After the case had been remanded to the district court, defendant pleaded and proved another Arkansas statute containing these words: "When a decree shall be entered, the court shall make such order touching the alimony of the wife and care of the children, if there be any, as from the circumstances of the parties and the nature of the case shall be reasonable." Kirby's Digest of the Statutes (1904) sec. 2681.

This statute, authorizing divorce courts to award alimony according to the circumstances, uses general terms applying to all cases. It confers on the divorce courts of Arkansas the power of similar courts throughout the country. That act was passed long before the enactment invoked by the majority to narrow the jurisdiction of divorce courts. The earlier statute is in full force according to its original import, since it has not been changed, modified or amended in a manner authorized by the constitution of Arkansas. The statutes may be construed together without doing violence to the rules of statutory construction. Both may be enforced. Under the earlier act, reasonable alimony may be determined from the circumstances of the parties and the nature of the case. For that purpose, land outside of Arkansas may be considered. Inquiry into general equity power of divorce courts of Arkansas is therefore immaterial. By proper pleadings

and proofs the facts relating to defendant's interest in the Nebraska lands were presented to the Arkansas court. If they were not in fact considered, plaintiff had her remedy by appeal to the supreme court of that state. In any event the question now determined was formerly adjudicated, according to principles of law properly settled. There is no Arkansas precedent to the contrary.

In *Fischli v. Fischli,* 1 Blackf. (Ind.) 360, the report shows that plaintiff procured a divorce from her husband in Kentucky, where the statute provided that the wife should have a specific share of his property. Subsequently she brought an action in Indiana for additional alimony based on property owned by defendant in that state. A demurrer to the petition was sustained, the court saying:

"This divorce having been granted in Kentucky, and a part of the husband's property decreed to the wife, it is important for us to know how far the rights of the parties, with regard to the provision made for the wife, were adjudicated and determined by the proceedings which were had in that state. For whenever a matter is adjudicated, and finally determined, by a competent tribunal, it is considered as forever at rest. This is a principle upon which the repose of society materially depends; and it therefore prevails, with a very few exceptions, throughout the civilized world. This principle not only embraces what actually was determined, but also extends to every other matter which the parties might have litigated in the case. * * * Guided by this principle, we should naturally suppose that the decree of the circuit court in Kentucky had done all that equity and justice required between the parties, if there is nothing in the record of their proceedings to evince the contrary, nor anything in the case to limit their authority; and that the rights of the parties, being thus determined, were subject to no further litigation. The separate maintenance that should be decreed to the wife out of the husband's property, according to her condition in life, the fortune she brought, and her husband's circumstances, was the subject matter of

adjudication before the court that granted the divorce; and if that tribunal had the power to do ample justice between the parties, but has failed to do it, no other tribunal can take cognizance of the subject, and supply the deficiency." See, also, *McCormick v. McCormick,* 82 Kan. 31.

The decision of the majority that the general statutory power of the Arkansas divorce court to award the wife reasonable alimony, upon the granting of a divorce, applies alone to cases wherein the husband obtains the decree is not warranted by the language or intention of the lawmakers or by any construction of the supreme court of Arkansas. The earlier Arkansas statute was adopted in the Indian Territory.

In *Ecker v. Ecker,* 22 Okla. 873, it was argued that this section did not authorize a court to grant alimony to a wife when the divorce was granted to the husband for her misconduct. The supreme court of Oklahoma said: "Under the language of this statute, or similar language of the statutes of other states, the courts have held that the authority of the court to make orders touching the alimony of the wife is not limited to those cases in which she prevails, or that whether the guilty wife will be granted alimony and the amount thereof is within the discretionary power of the court, to be controlled by the circumstances of each case."

*Adams v. Adams,* 30 Okla. 327, is to the same effect.

In the majority opinion, an estoppel not well pleaded or properly proved is substituted for a technical plea of *res judicata.* The law on both subjects is confused in disregard of the following observation in *Hanson v. Hanson,* 64 Neb. 506: "Considerable obscurity may be avoided by keeping in mind the distinction between a judgment, urged as a technical bar to another action, and one that is urged as conclusive as to some one or more points tried and determined in a former action."

In affirming the judgment allowing plaintiff additional alimony in the sum of $10,000, a technical plea of *res judicata* established by uncontradicted evidence has been

disregarded without ending the litigation for alimony. The record shows that defendant has property in Oklahoma. If the decision is right, he may be pursued in that state for still further alimony and in other states where he may have additional property. The decision of the Arkansas court has been reviewed here. Full credit has not been given to the judgment of the court of another state. The decree for additional alimony should be reversed and the action dismissed.

BARNES and LETTON, JJ., concur in this dissent.