ALVIN S. RODGERS AND HOMER KENNETT, *his Guardian*, v. REBECCA B. RODGERS *et al.*

No. 8125.

1. INSANITY—*Presumption of Continuance—Divorce.* The presumption of continued insanity arising from an adjudication thereof may be overcome by evidence other than an adjudication of restoration; and where a married man residing in this state and adjudged insane deserted his family and went to another state, residing there several years, being always considered as sane, and there procured a divorce on service by publication, without actual notice to the wife, which divorce he set up as a bar to this action for divorce, he must be regarded as sane.

2. DIVORCE IN SISTER STATE—*Effects.* The courts of a sister state, if authorized by law, may dissolve the marriage relation between a husband domiciled there and a wife residing in this state on service by publication, although unknown to her, but such courts have no power to settle the title to lands in this state, nor to control the custody of children residing here; and where a husband deserted his wife and children, leaving them in the occupation of a homestead here, and, going to another state, procured a divorce in accordance with law, but without actual notice to the wife, *held*, that, though such decree was effectual as to the *status* of the parties, it was not a bar to the allowance of alimony in the homestead, nor as to the custody of the children, in a subsequent action brought by the wife here.

3. ———— *Alimony—Rights of Children.* In an action brought by the wife against the husband for divorce, alimony, and the custody of children, it is error for the court to award and set apart to the children a portion of the real estate of their father.

*Error from Cloud District Court.*

On January 9, 1878, at Manhattan, Kan., Alvin S. Rodgers was married to Rebecca B. Rodgers. They lived together as husband and wife until 1883, their home being in Cloud county, and three children were born of the marriage. On or about April 16, 1883, Alvin S. Rodgers was adjudged insane, and was committed to the asylum at Topeka, where he remained until June 28, 1883, when he was discharged as cured. He returned home, but stayed only a few days, and then left. During the time that he remained in Cloud county his actions were unusual, and afterward he wrote a letter from Morgantown, of date August 10, 1883, strongly indicative of insanity. In it he declared a purpose of going to the Indian territory. He never afterward returned to Cloud county. He owned a quarter-section of land, which he and his family occupied as a homestead, and also an adjoining 40-acre tract. At some time after the adjudication of insanity Homer Kennett was appointed as guardian of said Alvin S. Rodgers. Soon after Rodgers left the country the father of Mrs. Rodgers took her and the children to his home in Ohio, where they remained about three years, until his death, when they returned to Kansas. Kennett, as guardian, let and leased the land, and, under direction of the probate court, applied the rents to the support of Mrs. Rodgers and her children, and about 1889 he let the premises to W. S. Gorsuch; but Mrs. Rodgers desiring possession, in the fall of 1890 she was permitted to build a small house on the quarter-section, into which she and the children moved. The whereabouts of Alvin S. Rodgers from 1883 until 1886 is not disclosed by the record, but from 1886 his home seems

to have been at Wheeling, W. Va., where he was regarded and treated as entirely sane, being employed part of the time in a nail factory. On November 12, 1888, he commenced an action in the circuit court of Ohio county, West Virginia, to obtain a divorce from Rebecca B. Rodgers, alleging that she had abandoned him more than three years before. He obtained service by publication only, as authorized by the laws of West Virginia, and on July 17, 1889, he was granted a divorce, and an order was made purporting to bar Rebecca B. Rodgers of all right, title and interest in and to the estate, real and personal, then owned or thereafter to be acquired by said Alvin S. Rodgers. On November 20, 1890, this action was commenced by Rebecca B. Rodgers against Alvin S. Rodgers to obtain a divorce on the ground of abandonment for more than one year, for the custody of the children, and for alimony, the real estate being specifically described, and praying that W. S. Gorsuch be enjoined from interfering with her occupancy of said land. Service was made by publication, and on January 31, 1891, the cause came on for hearing, and the court made certain findings of fact, stating, among other things, that Rodgers had been adjudged insane on April 16, 1883, and that subsequently said Homer Kennett had been appointed as his guardian, and thereupon Kennett was permitted to appear for himself, as representative of the estate, and move that the action be dismissed on the ground of such insanity; but the court continued the case. In the meantime, on August 5, 1891, Rebecca B. Rodgers filed in the probate court a petition for the purpose of restoration of said Alvin S. Rodgers to his rights as a sane man, and the hearing was set for August 26, 1891. It does not appear that notice of any kind was given to Alvin

S. Rodgers, but on August 26 Kennett appeared as his guardian, and on his request the case was continued until September 5, at which time it was again called, Kennett appearing as guardian in person and by Charles N. Peck, his attorney ; and the court, after hearing the evidence, adjudged that Alvin S. Rodgers was sane, and that he had been so ever since his discharge from the asylum, June 28, 1883. When the case was again called for trial in the district court, October 2, 1891, the record shows that the defendants appeared by Kennett, Peck & Matson, their attorneys, and the defenses were orally interposed that Alvin S. Rodgers was insane, and also that he had procured a divorce in West Virginia. The court found generally in favor of the plaintiff, granting her a divorce, awarding her the custody of the children, and granting to her as alimony the north half of the quarter-section, and granting to the children the south half thereof, and barring them from claiming any interest in the 40-acre tract remaining to Alvin S. Rodgers. Mrs. Rodgers knew nothing of the West Virginia divorce until after she had commenced this action. Defendants bring the case to this court. The opinion herein was filed February 8, 1896.

*Kennett, Peck & Matson*, for plaintiffs in error.

*J. W. Sheafor*, for defendant in error Rebecca B. Rodgers.

The opinion of the court was delivered by

MARTIN, C. J. : I. We deem it unnecessary to decide whether the proceedings of the probate court in August and September, 1891, for the restoration of Alvin S. Rodgers to his rights as a sane man were valid or not. It appears that, during his residence

in West Virginia, he was always regarded as sane, and, two years before this action was brought, he commenced proceedings for a divorce, and he actually obtained a decree on July 17, 1889, which was set up in his behalf as a bar to the present action. Under the circumstances, the defenses of insanity and a prior divorce are irreconcilable with each other. It is true that a presumption of continued insanity arises from an adjudication thereof, but this is not conclusive, and the evidence of the sanity of Alvin S. Rodgers ever since 1886 is sufficient to overthrow the presumption arising from the adjudication in 1883. An adjudication of restoration by the probate court is not indispensable, but the presumption of continued insanity may be overcome by other evidence. (*Water-Supply Co. v. Root*, ante, p. 187, 42 Pac. Rep. 715.) The desertion of his wife and children by Alvin S. Rodgers was probably a manifestation of his mental disorder, and therefore originally not a cause for divorce; but certainly he should be held to an abandonment, at least, from the date that he commenced his divorce proceedings at Wheeling, and abandonment for one year is a sufficient cause for a divorce in this state.

II. As a divorce against a non-resident of this state may be obtained on service by publication, comity requires that we should give full faith and credit to decrees of the courts of sister states of a like nature when authorized by law. In such cases we must treat them as judicial records, and under the protection of section 1 of article 4 of the constitution of the United States. The question of jurisdiction, however, is always open to inquiry. Under the laws of West Virginia introduced in evidence, as well as our own, the *status* of married persons comes within the range of the judicial power, although the parties may reside in differ-

ent states. But it will not be claimed that the title
to land or the custody of children in one state can be
settled by the decree of the courts of another; and,
while the West Virginia court did make a general or-
der purporting to bar the rights of the wife in the real
and personal property of the husband, yet this part of
the decree could have no extraterritorial force so as to
settle the title of any property outside of that state.
Mrs. Rodgers had acquired a homestead interest in
the land upon which she resided with her children,
and this could not be divested by the decree of any
court of another state. We must therefore hold that
the district court of Cloud county had jurisdiction
over the question of alimony and the custody of the
children, notwithstanding the West Virginia divorce,
which must be held valid to the extent of dissolving
the marriage relation. We think that the English
common-law doctrine that alimony is an incident only
to a suit for divorce, and cannot be the subject of an
independent action, should be regarded as modified in
this state, where we recognize the validity of service
by publication and the right of a wife to sue for ali-
mony alone. The defendant is often entirely ignorant
of the proceeding for divorce, as in this case, and may
know nothing of the place of residence of the plain-
tiff. The wife may have no opportunity of setting
up a claim for alimony nor for the custody of chil-
dren; and, if she had knowledge of the proceeding, the
court of another state would lack the power to deal
effectually with these questions; and, as stated by the
supreme court of Ohio in *Cox v. Cox,* 19 Ohio St. 502,
512, the wife may be still regarded as holding that re-
lation for the purpose of enforcing her claim to ali-
mony and the custody of children. We think our
position in this respect is supported by principle and

upon authority. (*Cox v. Cox*, supra ; *Cook v. Cook*, 56 Wis. 195, and cases cited.)

III. It was error for the court to give by its decree to the children the south half of the quarter-section. They were not parties to the action. Their mother brought suit for a divorce, for alimony, and for their custody, and the court had a right to award the whole quarter-section to her as alimony and for the support of the children ; and it appears that the south half was intended to be given for their support, but it was error to attempt to vest the title in them. " No one is an heir to the living." The children could not in any event inherit any property from their living parents, and the court had no authority to vest the title in them.

For error of the court in granting to Mrs. Rodgers a divorce, and thus failing to recognize the validity of the West Virginia decree in that respect, and the awarding of the south half of the quarter-section to the children, the judgment will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

All the Justices concurring.