MARY MATSON, Appellee, v. ED MATSON et al., Appellants.

**DIVORCE:** Alimony—Fraudulent Conveyance—Knowledge of Grantee. Where a husband was directed by a divorce decree to convey real estate to his wife, but immediately left the city, and conveyed, for a consideration of $1.00, property worth $1,600, to a resident of another city, who knew of the divorce decree, fraud in the conveyance was sufficiently established.

**COURTS:** Jurisdiction—Real Estate. Real property, as a general rule, is subject to the jurisdiction of the courts of the state where it is located.

**DIVORCE:** Judgment or Decree—Jurisdiction—Courts of This State
3   Can Enforce Foreign Judgment. An action can be brought in-
the courts of this state to enforce the judgment of the courts
of another state in a divorce suit for alimony, costs, and at-
torney's fees.

**COURTS:** Jurisdiction—Enforcement of Decree in Divorce Suit
4   A court of equity of the state of Washington, having personal
jurisdiction of the parties in a divorce suit, had jurisdiction
to grant a decree requiring the defendant to make conveyance
of land in this state as alimony. Such a decree operates only *in
personam*, and gives the judgment creditor the right to main-
tain an action in this state to require the defendant to convey
the land here, when, by his fraud, he has put it beyond the
power of the Washington court to require him to do so.

**DIVORCE:** Judgment or Decree—Enforcement of Foreign Judgment.
5   Evidence reviewed, in an action to require conveyance of land
in Iowa which had been ordered by a Washington court to bo
conveyed by a divorce defendant as alimony to his wife, and
*held* that the Iowa court exercised proper discretion in requir-
ing the husband to convey the land to his divorced wife.

**DIVORCE:** Judgment or Decree—Alimony—Final until Modified.
6   A divorce decree as to alimony, although subject to change,
under Sec 3180, Code, 1897, is a final judgment until modified.

**EVIDENCE:** Presumptions—Statutes of Sister State. In the ab-
7   sence of a showing to the contrary, it will be presumed that
the statutes of the state of Washington as to changing a divorce
decree are the same as in this state.

**JUDGMENT:** Jurisdiction—Time of Taking Effect. Ordinarily, a
8   decree, if held for a few days or longer, will, when entered,
relate back to the date of the decision, where the rights of no
innocent third persons intervene.

**COURTS:** Jurisdiction—Enforcement of Foreign Judgment for Ali-
9   mony. Where a court of the state of Washington enjoined a
divorce defendant from transferring any of his property, and
thereafter rendered a decree requiring him to convey to his
divorced wife real estate in Boone, Iowa, which was not spe-
cifically described, and the property was conveyed· to one in
this state who knew that the husband had been so directed
to convey, the wife could, in an action in this state against
the husband and said grantee, compel the conveyance of said
property to her.

**DIVORCE:** Alimony—Setting Aside Fraudulent Transfer. A fraud-
ulent transfer of property made by a husband to defeat his
wife's claim for alimony will be set aside.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

JULY 1, 1919.

ACTION in equity to set aside a deed executed by de-
fendant Ed Matson to his codefendant, Ida Johnson, and
for judgment against said Ed Matson for costs, attorneys'
fees, and monthly instalments of alimony allowed in plain-
tiff's favor in a divorce case in the state of Washington.
There was a decree for plaintiff, setting aside the deed, and
judgment for $171.25, being the balance due on the judg-
ment of the Washington court, for costs, attorneys' fees,
and balance due on alimony. The defendant Charles John-
son is the husband of Ida Johnson. The defendants appeal.
—*Affirmed.*

*Dyer, Jordan & Dyer,* for appellants.

*Goodykoontz & Mahoney,* for appellee.

PRESTON, J.—No evidence was introduced on the trial
in the district court. The decree is based entirely upon the
pleadings. The facts alleged in the petition are admitted in
the answer, with some denials. The petition set up a de-
cree rendered in the state of Washington, in an action for
divorce between plaintiff and defendant Ed Matson, which
decree directed appellant to convey certain real estate in
Boone, Iowa, to the appellee. It was further averred that,
at the commencement of said action for divorce in Wash-
ington, defendant Ed Matson was enjoined from disposing
of any of the property of the parties until further order of
the court, and averred that the property described was the
only property in Boone, Iowa, belonging to them or either
of them; that, immediately after the announcement of the

decision of the court, which announcement was in accordance with the decree afterwards filed, said defendant left the state of Washington and came to Boone, and has remained in the state of Iowa since that time; that, immediately upon arriving in Iowa, he transferred the property to defendant Ida Johnson without consideration; and that said Ida Johnson had knowledge of appellee's rights thereto at the time of such conveyance; that the property was worth $1,600 at that time; that the decree of the Washington court provided that defendant Matson should pay monthly instalments of alimony, and the costs and attorneys' fees in said divorce action; and that the same were unpaid, to the extent of $251.25; that the Washington court was one of general jurisdiction, and had jurisdiction of the subject-matter of the action, and that said defendant Matson appeared thereto in person and by attorney; that no appeal was ever taken therefrom; and that said decree has never been modified in any particular. The prayer of the petition in the instant case asked that the deed be set aside, and for judgment, and that the court require said defendant Matson to convey the premises to the plaintiff, or, in default thereof, that a commissioner be appointed for that purpose. The answer admitted certain of the allegations of fact in the petition, except that it averred that defendant Ida Johnson had paid her codefendant, Matson, $1.00 as a consideration for the premises, and that he had paid $80 on the judgment for the instalments of alimony and costs; averred that the decree of the Washington court was of no validity, in so far as it attempted to affect the title to real estate in Iowa; that the injunction referred to did not specifically describe the property. The answer denied that the restraining order applied to the property in controversy in this case; that the Washington court had jurisdiction of that portion of the subject-matter before it which is involved in this case; that the di-

vorce decree was a final adjudication between the parties, so far as it concerned the Iowa property; that the defendant Matson conveyed in violation of any restraining order; that the defendant Ida Johnson knew that defendant Matson was bound by the divorce decree to convey the property to plaintiff; all allegations of fraud; that plaintiff was the beneficial owner of the property in controversy; and that the defendant Matson was bound to convey this property to plaintiff; and that his deed to Ida Johnson constituted a cloud upon plaintiff's title. The answer also alleged that the Washington decree was void, and can have no basis for an action affecting the title to property in Iowa; that plaintiff's remedy, if any, is to be granted by the court which rendered the decree; that the courts of this state have no jurisdiction to require the defendant Matson to comply with an order imposed upon him by the court of another state; that the divorce decree has no effect outside of the territorial limits of the jurisdiction of the court which rendered it; that it does not bind the conscience of defendant Matson; that the Washington court had no jurisdiction, in the divorce case, of the property involved herein; that defendant Matson has violated no final judgment or decree to which the courts of this state are required to give full faith and credit. The prayer of the answer was that the plaintiff's petition be dismissed, and that defendant Ida Johnson be decreed to be the owner of the property. These are the general allegations in the petition and answer, but the facts are stated more in detail.

From the detailed statement of the facts in the pleadings, plaintiff states the following facts, in addition to those already stated, which appellants concede to be complete, with one or two exceptions, which will be noted. Plaintiff and defendant Matson were married in May, in 1897, and continued to live together as husband and wife until the summer of 1914. About 1909, they moved to

Washington, and thereafter continued to reside in King County, in that state, until the summer of 1914. There were four small children. In June, 1914, plaintiff commenced her divorce action in the superior court of King County, for an absolute divorce; on the date of the commencement of such action, a restraining order and order to show cause was issued, restraining the defendant from incumbering or disposing of any of the property of the parties to said action, and he (the defendant) was required to show cause before that court on July 28, 1914, why the order should not be made permanent. Said restraining order and the summons in the action of divorce were duly served upon appellant in the county of King and state of Washington, on the 22d day of July, 1914. On the 28th day of July, 1914, upon the return of the order to show cause why the restraining order should not be made permanent, appellant Matson appeared, in person and by his attorney, and the court confirmed the restraining order until further order of the court. Said action came on for hearing before said court on the 14th day of August, 1914, the appellee appearing in person and by her attorney, and appellant Matson also appearing in person and by his attorney; and the court, having heard the evidence and proofs, then and upon said day announced its decision granting plaintiff a divorce, the custody of the children, and granting to plaintiff the property in Iowa hereinafter referred to, by the following provision, afterwards incorporated in the decree, "that plaintiff be and she is hereby awarded the household furniture and piano and property known as 4628 Meade Street, Seattle, Washington, and the property of the parties hereto, located in the town of Boone in the state of Iowa, and the defendant is hereby directed and required to execute to plaintiff a conveyance of said Iowa property."

On the 8th day of October, 1914, a formal finding of

facts was made by the court, in accordance with the oral finding so announced on the 14th day of August, 1914, and on the same day, a decree was filed in accordance with said oral finding and the finding of facts above set out. The law of the state of Washington, at the time of the pendency of said action in the superior court of the state of Washington in and for King County, provided in relation to the property of parties to a divorce action as follows, being Section 4637 of Pierce's Code of that state (1902):

"In granting a divorce the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provisions for the guardianship, custody, and support and education of the minor children of such marriage."

The Supreme Court of the state of Washington has heretofore construed the provision of the law of that state, above set out, to require the parties to an action for divorce to bring into court all of their property, and a complete showing must be made; and it was decided by said court that said section conferred upon the court the power, in its discretion, to make a division of the separate property of the wife and husband.

Prior to the commencement of the action above referred to, the parties thereto were the owners of the following described real estate, situated in the county of Boone and state of Iowa, the record title standing in the name of Ed Matson, and the plaintiff having her inchoate right of dower therein, said property being described as follows, to wit:

Lot No. Thirty-one (31) in the Southwest Quarter (1/4) of the Northeast Quarter (1/4) of Section Twenty-nine

(29), Township Eighty-four (84), Range Twenty-six (26), Boone County, Iowa, also described by metes and bounds.

Said property consisted of a six-room house and seven lots, and the same was of the value of $1,600, the same being the only real property in the city of Boone, Iowa, owned by the said Ed Matson, and same being the only real property in Boone, Iowa, in which said appellee owned an interest, and the same being the only real property in the state of Iowa in which appellee or appellant Ed Matson owned any interest.

Immediately after the announcement of the decision of said court in said action, the appellant Ed Matson left the state of Washington and came to the state of Iowa, arriving in said state a few days thereafter.

On the 19th day of August, 1914, said appellant, having arrived in the county of Boone and state of Iowa, made a purported conveyance by warranty deed to the appellant Ida Johnson of the property in Boone, Iowa, for the consideration of one dollar. Said warranty deed was filed for record in the office of the recorder of Boone County on the 19th day of August, 1914. At and before the execution and delivery of said deed by appellant Ed Matson to appellant Ida Johnson, said Ida Johnson had full knowledge that appellee and appellant Ed Matson were husband and wife; had full knowledge of the decision of the superior court of the state of Washington in and for King County, hereinbefore referred to; and knew that said Matson was directed by the decision of said court to convey to the plaintiff the property hereinbefore described. The conveyance so made by the said Matson to said Johnson was without consideration, save and except the sum of one dollar. In the deed, the said Ed Matson described himself as single, notwithstanding the fact that the decree dissolving the marriage relations between appellee and him had not been filed, and he, the said Matson, then understood that, by the decision

of said court, he was directed to convey to appellee the property above described. From the facts admitted, the inference is plain that the conveyance made

1. DIVORCE: alimony: fraudulent conveyance: knowledge of grantee.

to Ida Johnson was made with intent on Ed Matson's part to defraud appellee, and that Ida Johnson knew of such intent at the time. Said decree also provided that appellant Ed Matson should pay the costs in said cause, including an attorney's fee of $50 for plaintiff's attorney, and in addition, that he pay the plaintiff the sum of $15 per month until further order of that court. At the time of the filing of the amended and substituted petition herein, nothing had been paid upon said judgment and costs and monthly instalments of alimony, except the sum of $80, and there was due and owing on account thereof a balance in the sum of $171.25. Appellants say that appellee has omitted from the statement the fact that, at the time of the oral announcement by the Washington court, the record does not show that, at that time, or on that day, any order was made, either oral or otherwise, directly to the defendant Matson, to make a conveyance of the Iowa property to plaintiff; and they say that, at the time the warranty deed to the Iowa property was executed and delivered by defendant Matson to defendant Ida Johnson, she did not know that he was bound by the terms of any decree to convey this property to plaintiff, and that she did not know of any fraudulent intent on the part of Matson. On examination of the pleadings as to this, we find that the allegation is made in Paragraph 8 of the petition:

"That, in the deed so executed by the said Ed Matson to Ida Johnson, he described himself as single, notwithstanding the fact that the decree of divorce in the action above referred·to had not been filed at that time, and the marriage relation between these parties had not been dissolved by the filing of the formal decree, but the said Ed

Matson then understood that the decision of said court was as hereinbefore set out, and that he was directed by the decision of said court to convey said property to the plaintiff herein."

The answer admits Paragraph 8, except the allegation that the defendant Ida Johnson knew that the defendant Ed Matson was bound by the decree of the Washington court to convey said property to plaintiff, and also all allegations of fraud, and also the allegation that Ida Johnson paid nothing for the property, and also the last line thereof, to wit: "and that she was by virtue of said decree the beneficiary owner of said premises."

The petition further alleges:

"That, at and before the time the execution and delivery of said warranty deed by defendant Ed Matson to defendant Ida Johnson, the defendant Ida Johnson had full knowledge that plaintiff and defendant Ed Matson were husband and wife, and had full knowledge of the pendency of the divorce action between said parties, and had full knowledge of the decision of the superior court of the state of Washington in and for King County, in the action above referred to, and knew that the defendant Ed Matson was directed and bound by the decision of that court to convey to the plaintiff herein the property hereinbefore described."

This allegation is not denied, except that defendants denied, in Paragraph 1, that Ida Johnson knew that the defendant Matson was "bound" by the decision of that court to convey to the plaintiff the property hereinbefore described. Manifestly, if Matson knew that he was directed by the decision to convey the property to appellee, and if Ida Johnson knew that he was directed by the decision to convey same, the oral announcement of the decision must have directed that such conveyance be made. As to the denial of fraud by the conclusion in the answer, the facts

being admitted that Ida Johnson knew that the conveyance to appellee had been directed by the court, that she had full knowledge of the decision of the court, and that she took the property for $1.00, while it was worth $1,600, are sufficient to establish fraud. The conclusion denying same did not put the facts pleaded in issue, especially as it was coupled with an admission thereof.

1. Several propositions are argued, but one or two are more especially relied upon and discussed, and we think they are really controlling. Counsel for either side concede that some of these precise questions

2. COURTS: jurisdiction: real estate.

have not been heretofore decided by this court. The first is that real property is subject to the exclusive jurisdiction of the state in which it is located. We do not understand appellee to controvert this proposition, nor do we intend to depart from that general rule; but appellants concede that there are at least two exceptions to the rule. One is that a court of equity, having personal jurisdiction of the parties, may, in actions which are otherwise cognizable in equity, and which arise out of fraud or of trust or of contract, grant a decree requiring a conveyance of land in another state; and on this they cite *Massie v. Watts*, 6 Cranch 148 (3 L. Ed. 181); *MacGregor v. MacGregor*, 9 Iowa 65; *Gilliland v. Inabnit*, 92 Iowa 46; *Blackman v. Wright*, 96 Iowa 541; *Sullivan v. Kenney*, 148 Iowa 361, 387; *Lindsley v. Union Silver Star Min. Co.*, 26 Wash. 301 (66 Pac. 382); *Proctor v. Proctor* (Note), 69 L. R. A. 673. They concede that some courts have extended this exception to cases of accounting between partners. They contend that the exception first referred to has never been extended to divorce actions, and that, where such relief has been asked, it has uniformly been denied, and they cite as to this proposition *Fall v. Fall*, 75 Neb. 104 (113 N. W. 175); *Proctor v. Proctor*, 215 Ill. 275 (74 N. E. 145); *Bullock v. Bullock*, 52 N. J. Eq.

561 (46 Am. St. 528) ; *Fall v. Eastin,* 215 U. S. 1, 9 (54 L. Ed. 65, 69) ; *Bodie v. Bates,* 99 Neb. 253 (156 N. W. 8) ; *Rodgers v. Rodgers,* 56 Kan. 483 (43 Pac. 779). It so happened that these last cases, or some of them, were divorce cases, but we do not understand that the rulings in all of them were based on the fact that they were

3. DIVORCE: judgment or decree: jurisdiction: courts of this state can enforce foreign judgment.

such. It should be kept in mind that, in the instant case, there was personal notice on and appearance by defendant Matson in the Washington court, in the case there, and in the Iowa court in this case, and the further important fact, as we view it, that plaintiff here is not relying alone on the Washington decree to give title, as was the fact in some of the cases cited. Nor does she claim that any deed was executed by defendant to her, even under compulsion, pursuant to the direction in the decree that he should convey. This was the situation in some of the cases. Her claim is that, the Washington court having complete jurisdiction, and having rendered judgment and decree, she may use that as a basis for another suit in the courts of this state, after personal notice, for judgment here, and for a decree here to carry out and enforce the Washington decree, which the defendant, by removing himself from the state of Washington, prevented the Washington court from enforcing in that state. Of course, if the defendant Matson had remained in the state of Washington, the courts there could have coerced him into executing a deed as directed by the decree. That is impossible now. We have no doubt that this was a fraud upon the courts in that state; and under the circumstances shown, we have no doubt that his purpose was to prevent his wife from obtaining the full relief to which she was entitled. This was also a fraud. Ought he, in equity, to be allowed to profit by his own wrong? So far as defendant Matson is concerned, there was no good faith. This being so, why

ought not his conscience to be bound? In the instant case, the equities are clearly with the plaintiff. In some of the cases cited by appellants, there was no personal notice, in the state where the second suit was brought, upon the party from whom the title to land was supposed to have been derived by the decree in the first state; and some of them were cases where no personal notice was had upon the party in the first suit,—that is, in the state where the decree was first rendered. There is another feature in the instant case which distinguishes it from all the cases cited, and that is that, in the instant case, there was, in addition to the decree in regard to the conveyance of the property in Iowa, a personal judgment rendered against defendant Matson in the Washington court, for costs, attorneys' fees, and alimony. This, even under appellants' contention, and under the cases cited by them, would authorize a suit in this state upon such judgment, in order that it might be enforced here. *Fall v. Fall*, 75 Neb. 104 (113 N. W. 175, at 177), and cases; *Bullock v. Bullock*, 46 Am. St., at page 533, top, holding that such judgment might be enforced here, under the full faith and credit clause of the Federal Constitution. Of course, no one claims that even such a judgment in the Washington court could be enforced by execution or otherwise in this state, without a judgment thereon in Iowa. So that the trial court in this case had jurisdiction and authority to grant at least partial relief to the plaintiff. We do not understand appellants to contend otherwise; indeed, the matter is not discussed, but only the proposition as to the real estate in Boone. Some of the cases cited refer to others of them, and we shall not attempt an extended review of all of them. The *Fall* case, supra, may be distinguished from the instant case in several particulars. In that case, E. W. Fall, the husband of the plaintiff, and the party against

4. Courts: jurisdiction: enforcement of decree in divorce suit.

whom the decree in the state of Washington was granted, directing him to convey land in Nebraska, was not personally served with notice, and made no appearance in the suit brought in Nebraska; but the plaintiff was relying upon the decree in the foreign state, as of itself having force, and as operating to convey the land in Nebraska. Again, as shown in the *Fall* case, at page 180, the laws of Nebraska have no power or jurisdiction in a divorce proceeding, to divide or apportion the real estate of the parties. Such is not the fact in Iowa, nor in the state of Washington, as shown by the statutes of that state, pleaded and admitted in this case. Still again, it was said by the majority in the *Fall* case, quoting from Bishop's Marriage and Divorce, that the division of property in a divorce proceeding is not based upon the view that the innocent party has an equitable interest in the property itself, but that it is a method of enforcing the duty of support and maintenance. But in the dissenting opinion, Mr. Chief Justice Sedgwick pointed out that the Supreme Court of Nebraska had held otherwise in a prior case, and that the majority opinion had overlooked such fact, or entirely misunderstood it. He says:

"The fundamental question in this case, the question upon which all others depend, is whether, by the law of this state, a wife has an equity in the land of her husband during coverture. The question is briefly disposed of in the former opinion (ante p. 104), and it is there considered that she has such equity. The meaning of the court, however, as expressed in the former opinion upon this point, has been substantially overlooked, or entirely misunderstood. It is, therefore, thought advisable to discuss the question more at large."

He then proceeds to discuss that proposition. We have held that:

"The dower right, given by statute to a wife in the property of her husband, though inchoate, pending the life

of the husband, is in the nature of a property right, and she cannot be divested of it by any act of her husband, whether done in good faith or in fraud, either of his immediate grantee or of those who may come after him." *Warner v. Trustees of N. Cemetery Assn.*, 139 Iowa 115, at 123.

We regard this as a matter of importance, in view of the holding in the *Fall* case, the *Bullock* case, supra, and perhaps others, that, under statutes different from those of this state and of the state of Washington, the subject of a divorce action is the matrimonial status, and that a decree adjudging land to the successful party is only in the nature of a decretal order, ancillary to the subject-matter of the suit. It may be true that alimony could not be allowed, nor a division of property made, without a divorce; still, since the wife has, under the Iowa law, an interest in the real property of her husband, and since, under the laws of Washington and of this state, the court may divide and award the property of the parties, where, as here, a divorce was granted, we think it is more than a mere matter of matrimonial status, and that the award of alimony and division of property is also the subject-matter of the action, though, perhaps, for the reason stated, in a sense ancillary.

This being so, we are of opinion that, though it is a divorce case, under its peculiar circumstances, and under the laws of Washington and Iowa in such matters, a court of equity in the state of Washington, having personal jurisdiction of the parties, had jurisdiction to grant the decree requiring a conveyance of land in Iowa. Under all these circumstances, we see no reason why the rule of the cases holding that a decree in one state may not be such as to affect land in another state should apply here. We understand appellants to concede that, had Matson executed a deed to plaintiff, pursuant to the decree, even though by compulsion, it would have been valid. Such was the situation in some of our cases, but we think some of our cases

go even further than that,—for instance, *Sullivan v. Kenney*, infra, and perhaps others.

We are not holding that such decree, of itself, operates to convey the title to the land, and plaintiff is not making such a claim. But we do hold that, under the record, such a decree is a proper and sufficient basis for the present action. And conceding the rule that the Washington decree operates only *in personam*, the plaintiff may maintain this action and obtain a decree that will operate *in personam* against the defendant here, and require him to convey the land in Iowa, and do the thing that defendant himself, by his fraud upon the Washington court, put it beyond the power of that court to do. We need not review the decision in the *Bullock* case, supra, since the opinion proceeds upon the same reasoning as the *Fall* case: that, under their statute, the division or awarding of property did not possess any element of judgment upon the issue submitted to the court, which was whether the marriage between the parties should be dissolved, and that the courts of New Jersey could not be asked to give greater efficacy to a decree for alimony made in New York than they would give to a like decree in New Jersey; but the court in that case said, in effect, that, if the courts in New Jersey could enforce such a decree, they would not refuse like relief on an extra-territorial judgment. The opinion in the *Bullock* case, as in the *Fall* case, was by a divided court.

It is suggested in the case of *Fall v. Fall*, supra, that, if the courts of other states can so adjudicate the rights of parties to land in another, it would nullify the recording acts, and cease to afford protection to purchasers of land. We suppose no one would claim that an innocent purchaser, purchasing land under such circumstances, without notice, would not be protected; but it is unnecessary for us to pass upon this point, because the record shows that defendant Ida Johnson had notice of all the facts, and that

she purchased property concededly worth $1,600 for $1.00, which, of itself, is a circumstance tending to establish fraud on both her part and Matson's. This, in connection with all the other circumstances in the case, is sufficient to show that it was a fraudulent conveyance, under the authorities. We shall not attempt an extended review of the other cases cited by appellants. It is enough to say that the earlier cases are referred to in the later ones, and the discussion and reasoning is much the same. We shall only briefly notice them.

Some of the cases are where the decree does not, on its face, purport to pass title to land in another state. In the *Proctor* case, supra, cited by appellants, there was no personal service upon the defendant, in Illinois, and no appearance for him; and in that case it further appears that the defendant had no property within the state of Illinois, and the decree sought to award the plaintiff an interest in real estate in Ohio. Under such circumstances, the Illinois court held that so much of the decree as sought to vest an interest in real estate in Ohio was beyond the jurisdiction of the court, on the ground that it was purely a proceeding *in rem,* with the property in another state. The *Proctor* case is annotated in 69 L. R. A. 673, where cases are cited extending the doctrine of *Massie v. Watts,* 6 Cranch 148 (3 L. Ed. 181), to actions cognizable in equity which do not directly arise out of fraud, trust, or contract. The *Massie* case is also annotated in Volume 1, Rose's Notes, 428. Some of the cases there cited hold that, under some circumstances, a decree in Federal and state courts may affect the title to land in foreign countries even; but others hold that this may not be done where it violates treaty obligations. In the case of *Rodgers v. Rodgers,* supra, the court granting the decree did not have personal jurisdiction over the defendant. We think neither the *Rodgers* case nor the *Proctor* case nor the *Bodie* case,

supra, deny the identical proposition advanced by the appellees in the instant case. In the *Bodie* case, it appears that the Arkansas court, granting the decree of divorce, was prohibited by statute from taking into consideration the value of real estate outside the state, in determining the amount of alimony. In the case of *MacGregor v. Mac-Gregor*, 9 Iowa 65, the *Massie* case was referred to and discussed; but it was held that a decree of the state of New York, rendered affecting lands in Iowa, was valid, and would be recognized. It is held in *Fauntleroy v. Lum*, 210 U. S. 230 (28 Sup. Ct. Rep. 641), that the court does not go back of the decree itself, to ascertain the cause of action resulting in the decree of a sister state; and in *Barber v. Barber*, 21 How. 582 (16 L. Ed. 226), it is held that parties to a divorce action are bound by the provision of the decree as to divorce and alimony, and that the judgment or decree will be carried into judgment in another state, to have there the same binding force as in the state where rendered. In *Cheever v. Wilson*, 9 Wall. 108 (19 L. Ed. 604), it is held that a decree affecting real estate outside the state binds the parties personally, and can be enforced in the state where the real estate is situated. Appellees contend that, even under the authorities cited by appellant, the judgment of the Washington court is a contract of record, citing *Johnson & Stevens v. Butler*, 2 Iowa 535; *Spilde v. Johnson*, 132 Iowa 484. Though not deciding the precise question in this case, the following may be cited to sustain our conclusion, some of which are, we think, analogous: *Sullivan v. Kenney*, 148 Iowa 361, 387, and cases cited; *Page v. McKee*, 3 Bush. (Ky.) 135 (96 Am. Dec. 201); *Burnley v. Stevenson*, 24 Ohio St. 474 (15 Am. Rep. 621); *Fletcher v. Ferrell*, 9 Dana (Ky.) 372 (35 Am. Dec. 143); *Moore v. Moore*, 208 N. Y. 97 (101 N. E. 711); *White v. Warren*, 214 Mass. 204 (100 N. E. 1103); *Newton v. Bronson*, 13 N. Y. 587 (67 Am. Dec. 89).

2. The foregoing seems to be the proposition most con-
fidently relied upon. We have taken more space for that
than intended. The others will be noticed as briefly as
may be. It is said by appellants that, if a

5. DIVORCE:
judgment or
decree: en-
forcement of
foreign judg-
ment.

court of equity, in a proper case, has juris-
diction over real property in another state,
the exercise of this jurisdiction is discre-
tionary, and is not a matter of right, citing
note to 69 L. R. A. 673, supra. Appellees concede that it
is discretionary, but they say that, in the language of the
court in *Fall v. Eastin,* supra, the policy of the state would
not be violated by a holding in accordance with the decree
of the trial court in this case, and that the decree should
be upheld. The discretion in the instant case was exercised
in favor of plaintiff.

3. Appellants' next contention is that it is necessary
that the judgment must be final, and that the judgment and
decree for alimony are not final in this case, because it is
subject to change, under Code Section 3180.

6. DIVORCE:
judgment or
decree: ali-
mony: final
until modified.

It seems to us it is a sufficient answer to
this to say that it is final until modified;
that no change has been made; and fur-
ther, that, before there can be a change of
the decree, there must be a change in the circumstances af-
fecting the situation and condition of the parties. The ap-
pellant left the state of Washington and conveyed the prop-
erty in question within four or five days after the Wash-
ington court had announced its decision, so that, in that
very brief space of time, there could not well be any change
in the circumstances surrounding the parties. As bear-
ing upon the question as to the finality of the judgment,
notwithstanding the power of the court granting it to modi-
fy the provision concerning alimony, see *Audubon v. Shu-
feldt,* 181 U. S. 575. By this we presume that the Wash-

ington statute, in respect to changing such
a decree, is like ours, in view of the fact
that there is no showing to the contrary.

7. EVIDENCE:
presumptions:
statutes of
sister state.

4. Appellants' next point is that the
decree was not entered of record for some little time after
the trial court announced his decision, and what the de-
cree would be. We are unable to see how this can affect the
rights of the defendants, or of the plaintiff.
Ordinarily, a decree, if held for a few days,
or even longer, relates back, when entered,
to the date of the decision. It might be
possible that a situation could arise where a conveyance
was made after a decision was announced, and before the
rendition of judgment or a decree, in which the rights of
innocent third persons might intervene. Such is not the
situation here, because, as stated, defendant Ida Johnson,
the purchaser, had notice of the matters affecting her rights.
Furthermore, the defendant Matson had been enjoined
from transferring his property, even before the announce-
ment by the Washington court of its judgment.

8. JUDGMENT:
jurisdiction:
time of tak-
ing effect.

5. Another point of appellants' is that the decree of
the Washington court does not specifically describe the
Iowa property. If plaintiff were relying upon the decree
itself to carry title, and if defendant Ida
Johnson were an innocent purchaser, there
might possibly be some force in appellants'
contention. But appellee does not make
such claim for the decree, but only claims
it as a basis for the action in this state. And, as said, de-
fendant was enjoined from transferring any of his proper-
ty, which would include all his property, whether described
or not. The answer admits the allegations of the petition,
that Matson knew he was directed by the Washington de-
cree to convey this property to appellee, and that defend-
ant Ida Johnson knew he was so directed.

9. COURTS: juris-
diction: en-
forcement of
foreign judg-
ment for ali-
mony.

6. There is a suggestion in *Fall v. Eastin,* supra, that whether any consideration was paid by defendant for the conveyance of the land is not material, whatever a creditor of plaintiff's husband's, Fall, might be

**10. DIVORCE: alimony: setting aside fraudulent transfer.**    able to do. We do not understand this to be the rule in Iowa. In *Picket v. Garrison,* 76 Iowa 347, it was held that a transfer of property made by a husband to defeat his wife's claim for alimony, though strictly not a debt, still may not be defeated by a fraudulent conveyance of the husband's property.

We reach the conclusion that the judgment and decree of the trial court ought to be, and it is,—*Affirmed.*

LADD, C. J., EVANS and GAYNOR, JJ., concur.